James W. SLY and Schorling Schneider on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,

v.

P.R. MALLORY & COMPANY, INC., Defendant-Appellee.

No. 82-2997.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1983.

Decided July 29, 1983.

J. Bradley Schooley, Terry, Robinson & DePres, P.C., Shelbyville, Ind., H. William Irwin, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Ind., for plaintiffs-appellants.

James A. Strain, Barnes & Thornburg, Indianapolis, Ind., for defendant-appellee.

Before PELL and ESCHBACH, Circuit Judges, and JAMESON, Senior District Judge.[*]

JAMESON, Senior District Judge.

Plaintiffs-appellants, James W. Sly and Schorling Schneider, on behalf of themselves and others similarly situated, brought this action against defendant-appellee, P.R. Mallory, Inc. (Mallory) seeking recovery of severance pay and other benefits as a result of their terminations of employment by Mallory. They appeal from a judgment dismissing their complaint following cross-motions for summary judgment. We affirm.

## I. Factual Background

On March 24, 1975, Mallory adopted a written "severance policy for salaried employees", which was applicable to all divisions of the Mallory Corporation. This policy was designated as "Standard Practice Instruction No. 17.04.01" (S.P.I.). According to officials of the Company, the S.P.I. was drafted in response to a severe economic recession in 1975 when Mallory anticipated that it would be forced to make large layoffs of salaried employees.[1]

On March 6, 1978, Mallory sold its Metallurgical Division to Contacts Metals Welding, Inc. (C.M.W.) As a result of the sale, approximately 167 salaried employees of the Metallurgical Division were terminated from their employment with Mallory. Thirteen of the terminated employees were not offered continued employment by C.M.W. and were paid full severance benefits under the terms of the S.P.I., without any qualifi-

cation, limitation or provision for termination of such benefits upon obtaining other employment. Two employees were offered continued employment by C.M.W., but were to be paid on an hourly basis rather than as salaried employees. They refused the offer and were also paid full severance benefits under the terms of the S.P.I. The remaining 152 employees were offered continued employment by C.M.W. as salaried employees. They were denied payment of any severance benefits by C.M.W. regardless of whether they accepted or declined the offer of continued employment. All accepted employment with C.M.W.

James W. Sly was employed by Mallory as plant manager until Friday, March 3, 1978. The following Monday, March 6, he was employed by C.M.W. at the same rate of pay with the same basic job responsibilities. Schorling Schneider likewise left Mallory's employment on March 3, 1978 and began working for C.M.W. on March 6, in the same job at the same salary.

## II. Proceedings in State and District Courts

Sly and Schneider brought this action in state court on behalf of themselves and other Mallory employees similarly situated, alleging breach of a contractual obligation to award them severance pay. The claim was certified by the state court as a class action. In an amended complaint a second count was added, alleging that Mallory had adopted a written severance pay policy which was an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act of 1974. (ERISA) 29 U.S.C. §§ 1001 et seq.

The action was then removed to the United States District Court, Southern District of Indiana, Indianapolis Division. The parties filed cross-motions for summary judgment. In its findings of fact and conclusions of law the court held that the state law breach of contract claim alleged in

---

[*] Hon. William J. Jameson of the District of Montana, sitting by designation.

[1] As the district court noted in its opinion, "The S.P.I. was not the result of nor a part of any collective bargaining agreement between Mallory and organized representatives of its employees but rather was an internal policy statement."

Count I had been preempted by ERISA, and that Count II, the ERISA claim, was without merit because Mallory's decision to deny benefits to plaintiffs was not arbitrary or capricious. The action was dismissed with prejudice.

### III. Contentions on Appeal

Plaintiffs-appellants contend that the district court erred in overruling their motion for summary judgment, sustaining defendant's motion for summary judgment, and ordering dismissal of plaintiffs' complaint. They argue that the S.P.I. was an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1), that any uncertainty as to the interpretation of the S.P.I. must be construed in favor of the plaintiffs, and that in reaching its decision the district court misconstrued certain uncontradicted facts and misapplied certain recognized rules of law. Defendant-appellee contends that the district court was correct in finding, on undisputed facts, that Mallory's denial of severance pay to plaintiffs was not arbitrary and capricious, and the judgment of dismissal accordingly should be affirmed.

### IV. Standard of Review

The parties agree that the S.P.I. is an "employee welfare benefit plan" within the meaning of ERISA, and that the courts have adopted an "arbitrary and capricious" standard of review for ERISA pension plans. Accordingly this court is bound by the decision of the pension administrator "unless [plaintiffs-appellants] can establish that it was 'arbitrary, fraudulent or in bad faith'." *Martinez v. Swift & Co.*, 656 F.2d 262, 263 (7 Cir.1981), quoting *Matthews v. Swift and Company*, 465 F.2d 814, 821 (5 Cir.1972). See also *Wardle v. Central States, etc.*, 627 F.2d 820, 823–24 (7 Cir. 1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), and *Reiherzer v. Shannon,* 581 F.2d 1266, 1272 (7 Cir.1978).

### V. Was Mallory's Denial of Severance Benefits to Plaintiffs Arbitrary and Capricious?

In a well considered opinion the district court held that the employee benefit plan was administered in a rational and reasonable manner, in good faith, within the discretion of the administrators and in accordance with the plain wording of the documents and instruments governing the plan. The court stated:

The denial of severance pay to employees who accepted their old positions with the purchaser of the Metallurgical Division was not arbitrary or capricious. Severance pay is generally intended to tide an employee over while seeking a new job and should be considered an unemployment benefit. Read as a whole, the SPI clearly anticipates the recipient of the severance benefits to be without employment. For example, it provides for a leave of absence during which time certain benefits remain in force as though the employee were still employed. That approval must be had in advance as well as the provision that other separation arrangements than outlined in the SPI may be made indicates that the award of separation benefits is discretionary. Finally, the SPI provides that severance pay be awarded when the employee is involuntarily terminated due to a reduction in work force or position elimination. While it is true that the work force of Mallory was reduced and positions were eliminated within Mallory due to the sale of the Metallurgical Division, in fact the work force remained intact and the positions remained available to the employees. To award severance benefits under these facts would result in a windfall to the employees who retained their positions with the purchaser of the going concern, which was clearly not the intention or goal of either the SPI or of ERISA.

### A. Provisions of ERISA

[1] ERISA is a broad, remedial statute, designed to protect the rights of participants in employee benefit plans and their beneficiaries. Section 404(a)(1) of the Act, 29 U.S.C. § 1104(a)(1), provides:

(a)(1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

. . . . .

(D) *in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.* (emphasis added).

Appellants contend that it was "precisely this responsibility" which Mallory breached by refusing to pay separation benefits to the plaintiffs.

## B. *Provisions of S.P.I.*

 The purpose and intent of the S.P.I. is set out in Part I, which reads in part:

I PURPOSE

To define the status and severance pay arrangements for salaried employees whose services are involuntarily terminated for the convenience of the company. This policy does not cover separation at time of normal retirement, discharge for unsatisfactory performance or discharge for cause. It is intended to cover separation caused by reduction in force of position elimination.

Relying primarily upon this language of the S.P.I., appellants argue that it is "clear and unambiguous" that upon their termination as employees of Mallory they had a "vested interest in and were entitled to payment of their accrued severance benefits." They urge that Mallory's decision was not made "in accordance with the documents governing the plan" nor made "solely in the interest of the participants and beneficiaries of the plan."

Mallory argues, and the district court properly recognized, that the S.P.I. must be read as a whole. Mallory urges that appellants' argument is inconsistent with other provisions of the S.P.I., and particularly Part IV relating to "Procedure" and Part V relating to "Approval".

Part IV provides:

Employees being terminated under the provisions of this policy will first be placed upon a leave of absence. A form F-1621 must indicate the last day worked, the number of paid leave weeks for which payment is to be made, and the date upon which the unpaid leave of absence expires and the employee is terminated. . . .

Part III, entitled "Policy", specifies the number of weeks an employee shall be entitled to severance pay while on leave of absence, based upon his length of service, and provides that "[D]uring the allowable separation leave period the employee may maintain his group health, major medical, and life insurance coverage. . . ."[2] Plaintiffs have not alleged or presented any evidence that they were placed on leave of absence as the S.P.I. requires. In fact, there would be no reason for allowing such employees to continue participation in Mallory fringe benefit programs. C.M.W. provided its own fringe benefits, although admittedly less than the Mallory benefits.

Part V of the S.P.I. provides:

Separation payments must be approved by the Division President, General Manager, or Group Vice President. In the case of Corporate Office employees, the appropriate Vice President must approve. Separation arrangements other than outlined in this policy must have the advance

---

**2.** The evidence was undisputed that a reason for placing a former employee on leave of absence was to enable the employees to continue medical coverage and life insurance and protect their families during the period they were out of employment. It was hoped also that the company might reemploy or reinstate employees laid off due to the business downturn. (Transcript of Certification Proceedings, p. 121).

approval of the Vice President, Personnel.

The evidence was undisputed that in practice all severance payments required the approval of the specified Mallory executives.[3]

In *Pinto v. Zenith Radio Corp.*, 480 F.Supp. 361 (N.D.Ill.1979), *aff'd without op.*, 618 F.2d 110 (7 Cir.1980), this court affirmed the decision of the district court which had upheld the employer's denial of severance benefits in factual circumstances similar to this case. The district court there held that the plaintiff was not entitled to severance pay because he was immediately hired by the defendants' successor company and thus was never unemployed as a result of the defendants' sale of a division of the company.[4]

#### C. *Employees' Knowledge of S.P.I.*

As noted above, the S.P.I. was not issued pursuant to any collective bargaining agreement, but was a policy statement adopted by Mallory. The S.P.I. was contained in a manual that was distributed to corporate officers, division managers, and corporate or supervisory staff. There is no evidence of any separate publication of the S.P.I., nor of any formal notice regarding the plan to employees at the time of hiring or at any later time. There is some dispute with respect to the extent to which employees, other than supervisors, were familiar with the plan prior to the filing of this lawsuit.[5]

#### D. *Practice of Mallory in Other Sales*

There was evidence at the certification hearing in state court that Mallory had sold a number of plants and divisions as going concerns, both before and after the sale to C.M.W. Officials of Mallory testified, and there was no evidence to the contrary, that the company had never awarded severance pay to former employees who were immediately rehired in comparable positions by the purchasers of those plants or divisions. (Transcript of Certification Proceedings, pp. 94, 105, 123) Appellant Sly, who had been part of Mallory management since 1964 when he served as chief accountant for the Metallurgical Division, admitted in his deposition that he was not aware of any instance where Mallory awarded severance pay to employees re-employed in comparable jobs by the purchaser of a division or plant. The uniform practice was followed in this case.

Appellants want to continue working for C.M.W. *and* to receive severance pay from Mallory. The severance pay plan was not a contract, but rather was an employee welfare benefit plan under ERISA. The plan was consistently interpreted in a reasonable manner.

#### VI. *Conclusion*

We agree with the district court that the administrators of the employee welfare benefit plan acted in a rational and reasonable manner, in good faith, within their discretion, and in accordance with the documents and instruments governing the plan.

We affirm the judgment of dismissal.

---

3. Appellant Sly testified in his deposition that whenever he terminated an employee in his supervisory capacity, he followed this requirement. He checked with his boss, and final authorization for the payment of severance benefits was always made by higher-level management. Similar testimony was given at the certification proceedings.

4. It is true, as appellants argue, that the policy statement in *Pinto* contained more specific language in providing that severance pay was not "automatic", but to be determined on a "case-by-case" basis. Each party there relied upon other provisions of the policy, but the court recognized, as we do here, that the policy must be read as a whole and concluded that the employee had acquired no vested right to severance pay.

5. Appellants question in particular the finding of the district court that only 60 out of approximately 2800 salaried employees received a copy of the manual. We find no evidence, however, contrary to the court's finding that "Newly hired salaried employees were neither told about the severance policy nor given any pamphlets or booklets describing severance pay."