David E. **BLAKEMAN** and Harold D. **Keeble, Plaintiffs-Appellants,**

v.

**MEAD CONTAINERS,**
**Defendant-Appellee.**

No. 85–5001.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 7, 1985.

Decided Dec. 26, 1985.

---

Robert H. Jones argued, Louisville, Ky., for plaintiffs-appellants.

Robert J. Brown argued, Smith & Schnacke, Dayton, Ohio, for defendant-appellee.

Before MERRITT and CONTIE, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

CONTIE, Circuit Judge.

Plaintiffs, a group of defendant's former employees, appeal from an order of the district court granting summary judgment in favor of defendant Mead Containers on plaintiffs' complaint pursuant to 29 U.S.C. § 1132 *et seq.* and state law. For the reasons that follow, we affirm.

### I.

On August 17, 1983, plaintiffs David E. Blakeman and Harold D. Keeble filed a complaint "on behalf of all other persons similarly situated who were former salaried employees of the Defendant Corporation, not covered by a collective bargaining

agreement" pursuant to 29 U.S.C. § 1132 and state law. Plaintiffs alleged that on May 8, 1970, Mead established an Employee Welfare Benefit Plan known as the "Severance Allowance Guide For Salaried Employees." The complaint alleged that "[p]ursuant to said severance plan, as amended in 1977, the Defendant agreed to provide one weeks pay for each full year of Company service ... with a minimum of (2) weeks pay and a maximum of (12) weeks pay for all salaried employees who are or were involuntarily terminated in the interest of the Company." Plaintiffs were terminated on July 25, 1983 due to the closing of Mead's Louisville, Kentucky facility. Plaintiffs alleged that Mead's refusal to grant them severance pay was arbitrary, capricious, and illegal, in violation of 26 U.S.C. §§ 401, 411, 501, and 29 U.S.C. § 1002. Further, plaintiffs alleged that in 1977 Mead reduced benefits under the plan and failed to inform plaintiffs of such change. Plaintiffs also alleged breach of contract and the right to recover under the theory of quantum meruit. Plaintiffs alleged that Mead had a written vacation pay plan for all salaried employees which provided benefits to employees who were employed by the defendant on December 31 of each year. Plaintiffs alleged that Mead's sale of the division prevented them from being Mead employees on December 31, and that Mead refused to pay vacation benefits, in violation of the vacation pay plan. Plaintiffs sought to maintain a class action pursuant to Fed.R.Civ.P. 23(b)(1), (2), and sought severance pay, vacation pay, a declaration that the 1977 amendments to the plan were void, punitive damages, prejudgment interest, the penalty provided by 29 U.S.C. § 1132(c), attorney fees and costs.

Mead's answers to interrogatories indicate that Mead sold the Louisville Division on July 25, 1983, the Toledo Division on July 18, 1983, and the Cincinnati Division on July 11, 1983. The interrogatories further indicated that the alleged severance pay plan had never been adopted by corporate resolution. "Mead Containers has never adopted a severance pay plan. In 1970, Mead Containers approved a discretionary severance pay guideline for use by the Division.... This guideline was revised in 1977. No formal corporate resolution occurred with respect to either guideline."

The severance plan adopted April 17, 1970 provided that "[t]he purpose of the severance allowance guide line is to provide consistency but, at the same time, permitting exceptions appropriate to individual situations." Further, while "[a]n employee who is discharged for cause (e.g. dishonesty, willful neglect of duty, etc.) or who voluntarily resigns is not eligible for a severance allowance," "[a]n employee who is involuntarily terminated in the interest of the Division (e.g. plant closing, curtailment, inability to perform satisfactorily, etc.) will be eligible for a severance allowance." The guidelines provided for both a basic allowance and a contingency allowance, and provided that "[t]he employee should be given the option of receiving the basic severance allowance in a lump sum or of remaining on the payroll for the prescribed period of time." If an employee elected to remain on the payroll and secured "a job before his basic allowance is exhausted, he will be paid any balance remaining in a lump sum." "If an employee who has elected to be continued on the payroll has been unable to find a job by the time his basic allowance has been exhausted, he will be paid a Contingency Allowance of one-half (½) pay for the period of time corresponding to his age and service as shown in the guide line schedule." The guidelines provided that "[m]anagers are encouraged to consider each case in the light of its own circumstances and to make *severance recommendations accordingly.*" Respecting vacations, the plan provided that "[v]acations for salaried employees vest on December 31 for the following year. Therefore, payment for vacation not taken is separate and distinct from the severance allowance." The amendments in 1977 reduced the amount of basic allowance and disposed of the contingency allowance.

On May 9, 1984, Mead moved for summary judgment, and, on September 18, 1984, the district court granted the motion. The district court found that the severance pay guidelines were never distributed or adopted by corporate resolution, and that Mead had paid severance pay to its employees at facilities that were closed and not at those that were sold. The court found that the denial of vacation and severance pay was not arbitrary and capricious in light of the fact that the guidelines were never published to the employees and were not adopted pursuant to a collective bargaining agreement. The court held that

> [t]he 1977 guidelines as well as the 1970 guidelines may be reasonably interpreted as not providing severance pay to employees who continued to work at their same salary but for a different employer following the sale of the plant.... [T]he guidelines do not specifically refer to what would happen in the event of a sale of a plant by the defendant, and then employment of the plant's employees by the new purchaser. However, it is obvious that the guidelines were meant to give severance pay benefits to employees who, through no fault of their own, lost their jobs, i.e., were involuntarily terminated.

The court dismissed the claim for damages due to Mead's failure to disclose the plan, on the ground that there had been no written request for disclosure. The court found the state law claims to be preempted by 29 U.S.C. § 1144.[1] On appeal, plaintiffs apparently pursue both ERISA and state law claims.

**II.**

Plaintiffs bring this action for denial of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) which provides:

> A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

There seems little doubt that plaintiffs are both "participants" and "beneficiaries," 29 U.S.C. § 1002(7), (8), that the employer, Mead, is the plan "administrator," 29 U.S.C. § 1002(16), and that the severance pay and vacation provisions are "employee welfare benefit plans" as defined in 29 U.S.C. § 1002(1).[2] *Jung v. FMC Corp.,* 755 F.2d 708, 710 (9th Cir.1985); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir. 1984); *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir.1985); *Sly v. P.R. Mallory & Co.,* 712 F.2d 1209, 1211 (7th Cir. 1983); *Pinto v. Zenith Radio Corp.,* 480 F.Supp. 361, 363 (N.D.Ill.1979), *aff'd,* 618 F.2d 110 (7th Cir.1980); *Petrella v. N L Industries, Inc.,* 529 F.Supp. 1357, 1362 (D.N.J.1982); *Calhoun v. Falstaff Brewing Corp.,* 478 F.Supp. 357, 359 (E.D.Mo. 1979). It is further clear, and the parties agree, that we review the decision of the administrator to deny benefits only to determine whether such decision was arbitrary, capricious, in bad faith, erroneous as a matter of law, or unsupported by substantial evidence. *Jung,* 755 F.2d at 711; *Anderson v. Ciba-Geigy Corp.,* 759 F.2d 1518, 1521 (11th Cir.1985); *Sly,* 712 F.2d at 1211; *Moore v. Reynolds Metals Co. Re-*

---

1. On September 28, plaintiffs moved the district court to vacate its judgment, and, on October 3, the district court denied that motion.

2. 29 U.S.C. § 1002(1) provides:

 The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insur-

ance or otherwise, (A) medical, surgical, or hospital care or benefits, or *benefits in the event of* sickness, accident disability, death or *unemployment, or vacation benefits,* apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

(emphasis added). *But see California Hospital Assn v. Henning,* 770 F.2d 856 (9th Cir.1985).

*tirement Program,* 740 F.2d 454, 457 (6th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Van Gunten v. Central States,* 672 F.2d 586, 587 (6th Cir.1982); *Ponce v. Construction Laborers Pension Trust for Southern California,* 628 F.2d 537, 542 (9th Cir.1980); *Petrella,* 529 F.Supp. at 1366. "Generally speaking, trustees [administrators] are knowledgeable of the details of a trust fund (both its purpose and its operation), and thus they are in a position to make prudent judgments concerning participant eligibility. Courts are extremely reluctant to substitute their judgment for the judgments of the trustees, and will do so only if the actions of the trustees are not grounded on any reasonable basis." *Ponce,* 628 F.2d at 542. However, the administrator "has no discretion to secrete the plan, to flout the reporting, disclosure and fiduciary obligations imposed by ERISA, or to deny benefits in contravention of the plan's plain terms." *Blau,* 748 F.2d at 1353. Further, "imposition of a standard that is not contained in the terms of a plan amounts to an arbitrary and capricious decision." *Id.* at 1354.

■ Judgment was granted in favor of defendant Mead on a summary judgment motion. "[O]n a motion for summary judgment the movant has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). Accordingly, we examine the distinctive characteristics of the plans in issue here. First, the guidelines specifically indicated that they were to be construed flexibly so as to allow appropriate exceptions in individual situations. Second, severance allowance was allowed for those "involuntarily terminated in the interest of the Division." Third, if an employee acquired a job before his allowance was used up he would receive the remainder as a lump sum payment. Fourth, it is clear that Mead had previously denied severance payments to employees terminated and rehired in the sale of a Mead division.

In *Jung,* the court upheld the decision of the administrator denying benefits, on the grounds that the successor had agreed as part of the sale to hire the predecessor employees, the severance payments only appeared available in case of actual unemployment, and the past practice of the company had been to deny benefits in comparable circumstances. 755 F.2d at 712–13. The court found the situation more comparable to *Sly* than *Blau* and distinguished *Blau* on the grounds that the court, in *Blau,* found pervasive violations of ERISA, that the employer never responded to the employees' demands for benefits, and that the successor employer had no obligation to hire plaintiffs or continue in effect the severance pay plan.

In *Anderson,* the employees were rehired by the successor employer at the same salary but with loss of seniority. The court noted that "[t]he Plan never specified a period of unemployment as a condition precedent to receiving severance pay benefits," and that the plan had an exception for "special situations." 759 F.2d at 1521. As factors to consider in determining whether a decision was arbitrary or capricious, the court cited uniformity of construction, reasonableness, and unanticipated costs. "Evenhandedness of treatment is evidence of good faith." *Id.* at 1522. The court upheld the denial of benefits, citing the "special situation" language of the plan and past practices. *See also Sly,* 712 F.2d at 1213.

In *Pinto,* the court upheld a denial of benefits where the purpose of the severance payments was to help in readjustment, where payments were made on a case-by-case basis, where payments were terminable upon employment, and where the plaintiffs were never unemployed. 480 F.Supp. at 363.

In *Blau,* the court found that the event triggering eligibility for benefits was job elimination and not continued unemploy-

ment or the failure of the successor company to rehire the employees. 748 F.2d at 1354–55. "Certainly, under the applicable case law we cannot deny that jobs are eliminated—and then, perhaps, reinstated—when one employer succeeds another." *Id.* at 1355. The court distinguished *Sly* and *Pinto* on the ground that the plan in those cases conditioned the availability of benefits on the employee's unemployment. *Id.* at 1354 n. 2. Further, "we decline to reward Del Monte's past practice of denying severance benefits to employees in this situation by interpreting the plan with reference to Del Monte's past course of conduct. Imposition of conditions outside the plan amounts to arbitrary and capricious conduct in spite of how often it is practiced." *Id.* at 1356. *See also Petrella,* 529 F.Supp. at 1362 (evidence indicated that severance payments were akin to a bonus and were never tied to actual unemployment).

We conclude that Mead's decision to deny severance pay to the plaintiffs is not arbitrary, capricious, and unreasonable in this context. Inherent in the express language of the plan is the flexibility with which such decisions are to be made, and Mead's history of denying benefits in these circumstances supports Mead's decision.[3]

We reach a similar conclusion with respect to the vacation plan. The language of that plan clearly states that the employees are only entitled to vacation if employed on December 31 of the year in question. There is no evidence of a different custom or practice, *Petrella,* 529 F.Supp. at 1363, which might dictate a different result.

### III.

Plaintiffs also seek to recover under both plans on state law contract theories. It is clear that common law causes of action for breach of contract are preempted by ERISA. *Shaw v. Int'l Ass'n of Machin-*

ist and Aerospace Workers Pension Plan, 563 F.Supp. 653, 658–59 (C.D.Cal.1983), *aff'd,* 750 F.2d 1458 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); *Blau,* 748 F.2d at 1356. "ERISA preemption extends to state common law causes of action as well as state regulatory statutes, and ... claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are nonetheless preempted when the claims arise from the administration of such plans." *Scott,* 754 F.2d at 1504. Preemption "depends on the conduct to which such [state] law is applied, not on the form or label of the law." *Id.* "Therefore, in determining whether each of plaintiffs' claims is preempted by ERISA, we inquire as to whether the conduct challenged by each claim was part of the administration of an employee benefit plan." *Id.* at 1505. Under this analysis, the district court correctly held that plaintiffs' state law claims were preempted by ERISA.

Accordingly, the judgment of the district court is AFFIRMED.

---

**3.** In support of their argument that Mead's denial of benefits was arbitrary, appellants claim that Mead illegally failed to disclose the plan. This claim, as the district court found, is clearly

precluded by the record which includes no written request for a copy of the plan as clearly required by 29 U.S.C. § 1024(b)(4).