**Alvin C. ADAM, et al**

v.

**JOY MANUFACTURING COMPANY.**

Civ. No. 84–736–D.

United States District Court,
D. New Hampshire.

Jan. 23, 1987.

Warren H. Pyle, Boston, Mass., Russell F. Hilliard, Concord, N.H., Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, PC. by Warren H. Pyle, Boston, Mass., Upton, Sanders & Smith by Russell F. Hilliard, Concord, N.H., for plaintiffs.

Gallagher, Callahan & Gartrell by Steven J. McAuliffe, Concord, N.H., for defendant.

## OPINION

DEVINE, Chief Judge.

Plaintiffs Alvin C. Adams and seventy-seven other former employees of defendant Joy Manufacturing Company ("Joy") bring this action, claiming that Joy's refusal to give them severance pay benefits following their employment termination violates the Employment Retirement Income Security

Act ("ERISA"), 29 U.S.C. §§ 1001–1461.[1] Currently before the Court are defendant's motion for summary judgment pursuant to Rule 56(c), Fed.R.Civ.P., plaintiffs' objection thereto, and plaintiffs' cross-motion for partial summary judgment. For the reasons set forth below, both motions are denied.

*Factual Background* [2]

Plaintiffs are former salaried nonunion employees of Joy at its Claremont, New Hampshire, facility ("the facility"). In November 1983, Joy executed an agreement for sale of the facility to Sullivan Machinery Company ("Sullivan"), purchase and sale of which was consummated in March 1984. Plaintiffs were offered and accepted continuing employment with Sullivan and in the process lost no work time; however, the salaries at Sullivan were lower than the salaries plaintiffs had received at Joy.

Joy had maintained a severance pay policy for nonunion employees dating back to at least December 14, 1971, which essentially provided that employees terminated through no fault of their own would receive severance pay of one week's salary for each full year of service. Written severance policy standards were contained in Joy's Manual of Corporate Policy ("the Manual"), a loose-leaf ring binder subject to periodic revision which contained policies on a number of subjects. Copies of the Manual were not automatically distributed to nonunion employees, and an issue of fact exists as to whether employees were provided Summary Plan Descriptions of the benefit plan as required under ERISA, 29 U.S.C. § 1022(a)(1). Manual revisions were neither circulated to those without Manuals nor publicized in any manner such as posting the revised pages or notices thereof in prominent locations in the plant; however, Manuals were accessible for viewing upon request, and approximately twenty supervisory employees at the Claremont facility had copies.

The stated purpose of the severance pay, as explained in a Manual revision page dated June 30, 1977, was "to provide certain terminated employees, in consideration of their length of service, with a form of post-employment income continuance for a limited period, during which the employee may concentrate on seeking other employment." Defendant's Motion, Exhibit A, § B(5). Thus, employees discharged for cause (e.g., for violation of rules or for malfeasance) were ineligible to receive severance pay. *Id.* at Exhibit A, ¶ B(6). Similarly, an earlier revision page provided that employees who accepted a pension upon voluntary or involuntary retirement or employees "transferred from one unit of Joy Manufacturing Company, a subsidiary, or associated company to another unit, subsidiary or associated company," were ineligible for severance benefits. *Id.* at Exhibit A, ¶ C(3) (revision page dated October 16, 1972).

Consistent with the policy's stated purpose and existing provisions, Joy revised the Manual on October 17, 1980, effective that date, to deny severance pay to nonunion employees whose jobs were eliminated through the sale of a company operation and whose employment was continued without interruption by the buyer. This revision ("Revision I") provided:

*Sale of a Segment of the Business*—Employees who are terminated by the Company in connection with the sale of a segment of Joy Manufacturing Company, a subsidiary, or affiliated Company and who are offered continuing employment by the Purchaser shall not be eligible to receive any benefits under the terms of this policy.

*Id.* at Exhibit C, ¶ F(2).

Paragraph C(2) of this same revision page reiterated past policy, i.e., that sever-

---

**1.** Jurisdiction of the Court exists pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

**2.** The procedural history of this litigation is set forth in this Court's Order of October 21, 1985, and the Court declines to repeat itself. *See*

*Adams v. Joy Mfg. Co.,* No. 84–736–D (D.N.H. Oct. 21, 1985) (order denying defendant's alternative motions to dismiss or to stay pending remand).

ance pay was limited to instances of involuntary or undeserved unemployment. "Only employees who are terminated as a result of dismissal without prejudice or a permanent reduction in force, will be paid a severance allowance...." *Id.* at Exhibit C, ¶ C(2). However, it is unclear whether ¶ C(2) was revised as of October 17, 1980, or whether ¶ C(2) remained intact from some prior revision.[3]

At some point prior to the late spring or early summer of 1983, Joy management decided to sell off various unprofitable company operations, the Claremont facility included. This decision was approved by the Joy Board of Directors on July 19, 1983. Beginning in the spring and continuing throughout the summer and fall, James Chokey, general counsel for Joy and the project manager responsible for disposition of the company division which included the Claremont facility, began entertaining purchase inquiries.

On August 12, 1983, during the period in which Chokey was negotiating with potential purchasers of the facility, Revision I of the severance pay policy was amended. The amended provision ("Revision II"), effective July 29, 1983, provided:

> *Sale of a Unit or Subsidiary*—Employees, who are terminated by the Company in connection with the sale of all or part of a unit or subsidiary of the Company and who are offered continuing employment *at the same base salary* by the purchaser, will not be eligible to receive any benefits under the terms of this policy.

*Id.* at Exhibit D, ¶ A(4) (emphasis added). Excerpts from deposition testimony of the persons responsible for amending the Manual reveal that the phrase "at the same base salary" was included in earlier draft versions of the policy which had been circulated to various members of Joy management for discussion purposes, but testimony is unclear and contradictory as to whether the phrase was included in the final version of Revision II deliberately or inadvertently.

In late August or early September 1983 (the exact date is uncertain) Joy began negotiating with Donald Hoodes, president of Sullivan and a former Joy executive, for the sale of the facility. These negotiations and the prospect of an impending sale of the facility were reported in area newspapers on October 5th and 6th. Understandably, the publicity and resultant uncertainty about future viability of jobs at the facility led to general anxiety at the plant.

On October 13, 1983, in response to the growing unrest, and in order to forestall wholesale desertion by employees, Joy posted a notice on bulletin boards in the facility. This notice stated in pertinent part:

> TO ALL EMPLOYEES:
> CLAREMONT MANUFACTURING PLANT
> If the present negotiations for the purchase of the Claremont facility are consummated there will be a public announcement at least two weeks prior to the date the sale becomes final. During this period of at last two weeks all employees will, if they so desire, be able to exercise their options *as presently defined* by Joy Manufacturing Company's Corporate Policy....

*Id.* at Exhibit H (emphasis added). Regarding severance pay and "options as presently defined," on October 13 (the date of the notice) the three options for nonunion employees were enumerated in the Manual as follows: (1) the employee could voluntarily quit, in which case he or she would be ineligible for severance pay; (2) the employee could, if eligible, voluntarily resign and apply for a pension, in which case he or she would be ineligible for severance pay; or (3) the employee could remain with Joy until the date of the termination, in which case he or she would be eligible

---

**3.** Manual revision pages contain a notation that changed paragraphs are to be differentiated from unchanged paragraphs by use of an asterisk; however, examination of the various revision pages and the dearth of asterisks suggests that changed paragraphs were not uniformly noted. *See* Defendant's Motion, Exhibits A, C, D, and J.

for severance pay unless offered continuing employment *at the same base salary* by the successor company. *See id.* at Exhibit D, ¶¶ A(3), D(2). Evidence indicates that posting of the notice alleviated the atmosphere of anxiety and unrest then prevailing in the plant. Plaintiffs' Cross-Motion, Brunelle Affidavit at 7.

In mid-October a handshake agreement was reached by which Hoodes was to purchase the facility. Sometime thereafter Hoodes and his representatives met with union officers, following which, on October 23, 1983, the union local met and, *based on Hoodes' purchase of the facility being contingent on their so doing,* voted to accept a thirty percent pay reduction. An agreement was signed to this effect the following day, October 24, 1983.

Three days later, on October 27, 1983, Joy amended Revision II, allegedly in response to management's discovery that the phrase "at the same base salary" had been included inadvertently. The new provision ("Revision III") deleted that phrase, as follows:

> *Sale of a Unit or Subsidiary*—Employees, who are terminated by the Company in connection with the sale of all or part of a unit or subsidiary of the Company and who are offered continuing employment by the purchaser, will not be eligible to receive any benefits under the terms of this policy.

*Id.* at Exhibit J, ¶ A(3). Revision pages were sent to Manual holders with a cover letter indicating that the phrase "at the same base salary" had been deleted and that the change was *retroactive* to July 29, 1983. The Court has not seen evidence to indicate that Revision III or notice thereof was circulated to those without Manuals or posted prominently within the plant.

On November 11, in response to deteriorating employee relations stemming from the twin specters of lowered wages after sale of the facility was finalized and loss of severance pay benefits based on the October 27 retroactive revision of the severance pay policy, Joy held a meeting of its employees and announced that, in this one instance, Joy would provide "make-up" pay to Claremont employees who accepted continuing employment with Sullivan. Make-up pay consisted of the difference between an employee's former salary at Joy and the reduced salary paid by Sullivan, for a period of time equal to the period the employee would have received severance pay if not employed by Sullivan.

On November 17, 1983, Joy and Sullivan executed a final purchase and sale agreement.

*Rulings of Law*

Plaintiffs, all of whom took jobs with Sullivan, allege that their October 23 acceptance of wage reductions and their agreement to continue employment with Sullivan were done in reliance on their belief that, based on the posted notice of October 13 and the severance pay policy of August 12 (Revision II) to which the notice applied, they would receive severance pay upon reemployment with Sullivan in accordance with the terms of Revision II. Plaintiffs further allege that the October 27 retroactive Manual revision (Revision III) was ineffective to deprive them of their right to severance pay because they continued to work after the October 13 notice was posted. Finally, plaintiffs allege that Joy's actions in failing to pay them full severance pay, in amending the severance pay policy retroactively, and in failing to abide by the reporting and disclosure requirements of ERISA violated various provisions of ERISA, entitling them to full severance pay according to the terms of Revision II.

**I.  *The Applicability of ERISA***

■ ERISA is a comprehensive remedial statute designed to cure widespread defects in the private pension system and to protect the interests of employees and their beneficiaries in employment benefit plans. *See* H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4639-43; *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). To this

end, ERISA subjects employee fringe benefit plans to federal regulation. ERISA sets forth applicable uniform standards which employee benefit plans must meet, including rules regarding disclosure requirements. 29 U.S.C. §§ 1021–1031. The statute also defines a specific, uniform, required standard of conduct for fiduciaries, delineating fiduciary responsibility. *Id.* at §§ 1101–1114. However, ERISA does not mandate that employers provide any particular benefits or minimum thereof. *Shaw, supra,* 463 U.S. at 91, 103 S.Ct. at 2896.

ERISA applies to any "employee benefit plan" if it is established "by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). "Employee benefit plan" encompasses "welfare plan", *id.* at 1002(3), and "welfare plan" includes any program which provides benefits for contingencies such as illness, accident, disability, death, or unemployment, *id.* at § 1002(1). Severance pay plans are explicitly included within the definition of "welfare plan". 29 C.F.R. § 2510.3–1(a)(3) (1986) ("the effect of section 3(1)(B) of the Act is to include within the definition of 'welfare plan' those plans which provide holiday and severance benefits, and benefits which are similar (for example, benefits which are in substance severance benefits, although not so characterized).") It is clear on the record before the Court that the severance pay plan here at issue is an employee welfare benefit plan to which ERISA applies. *See Gilbert v. Burlington Indus., Inc.,* 765 F.2d 320, 324–26 (2d Cir.1985), *aff'd mem.,* — U.S. —, 106 S.Ct 3267, 91 L.Ed.2d 558 (1986); *Holland v. Burlington Indus., Inc.,* 772 F.2d 1140, 1144–46 (4th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3271–72, 91 L.Ed.2d 562 (1986); *Jung v. FMC Corp.,* 755 F.2d 708, 710 n. 2 (9th Cir.1985); *Donovan v. Dillingham,* 688 F.2d 1367, 1371 & n. 4 (11th Cir.1982) (en banc).

## II. *The Decision to Deny Benefits*

### A. *The ERISA Standard of Review*

■ Severance pay plans are not subject to ERISA's participation and vesting requirements, 29 U.S.C. § 1051(1), or ERISA's funding requirements, *id.* at § 1081(a)(1). However, such plans are subject to the reporting and disclosure requirements, *id.* at §§ 1021–1031, and are subject to the standards relating to fiduciary responsibility, *id.* at §§ 1101–1114. Applicability of ERISA to the plan at issue having been established, Joy's severance pay plan is, accordingly, subject to ERISA's reporting, disclosure, and fiduciary requirements. Furthermore, regardless of whether and to what extent Joy complied with these administrative and reporting requirements, ERISA operates to protect plaintiffs' interests. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir.1984) (and citations therein), *cert. denied,* — U.S. —, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Gilbert, supra,* 765 F.2d at 328–29.

However, ERISA was also crafted to protect the interests of *employers* by putting an end to conflict and inconsistent state regulation of employee benefit plans. *Shaw, supra,* 463 U.S. at 99, 105 & n. 25, 103 S.Ct. at 2904. This purpose is achieved by § 514(a), the preemption clause of ERISA, which supercedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA, 29 U.S.C. § 1144(a), "state law" being broadly defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," *id.* at § 1144(c)(1). "The pre-emption provision was intended to displace all state laws that fall within its sphere," the Supreme Court recently stated, "even including state laws that are consistent with ERISA's substantive requirements." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (citing *Shaw, supra,* 463 U.S. at 97, 103 S.Ct. at 2900). *See also Shaw, supra,* 463 U.S. at 98–100 & nn. 18–20, 104, 103 S.Ct. at 2903.

ERISA's legislative history indicates that claims are to be construed in accordance with federal common law. According to the Conference Report which accompanied

the Act, it was the intent of Congress that a body of federal common law be developed by the courts to deal with ERISA claims in much the same manner that courts have developed a federal common law for the enforcement of collective bargaining agreements under § 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. §§ 141–187. H.R.Conf.Rep. No. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 5038, 5107. *See also Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 3098–99 n. 18, 87 L.Ed.2d 96 (1985) (Brennan, White, Marshall, Blackmun, JJ., concurring); *Holland, supra*, 772 F.2d at 1147 n. 5; *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir.1985) (and citations therein). The Court turns, therefore, to determining applicable federal law.

In order to determine whether Joy properly denied the claims for severance pay at issue here, the Court's starting point must be that the individuals at Joy who were responsible for interpreting and granting or denying the benefits described in the Manual are, under the definitions of ERISA, both "administrators" of the severance pay plan and "fiduciaries". 29 U.S.C. §§ 1002(14), 1002(16)(A)(ii), 1002(21)(A); *Blau v. Del Monte Corp., supra*, 748 F.2d at 1352. As an ERISA fiduciary, Joy was constrained to discharge its duties with respect to its severance pay plan "solely in the interests of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries;" "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;" and "in accordance with the documents and instruments governing the plan...." 29 U.S.C. § 1104(a)(1).

■ In order to establish that Joy violated its fiduciary duty, plaintiffs must show by a preponderance of the evidence that Joy acted in a manner that was "arbitrary, capricious, in bad faith, erroneous as

a matter of law, or unsupported by substantial evidence." *Blakeman v. Mead Containers*, 779 F.2d 1146, 1149–50 (6th Cir.1985) (and citations therein); *see also, e.g., Griffis v. Delta Family-Care Disability & Survivorship Plan*, 723 F.2d 822, 825 (11th Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3514, 82 L.Ed.2d 823 (1984); *Jestings v. New England Tel. & Tel. Co.*, 757 F.2d 8, 9 (1st Cir.1985). The Court's standard of review toward welfare benefit plan administrators is deferential. Based on the fact that trustees are generally knowledgeable about the plans they are administering and are, therefore, in a position to make reasonable and prudent determinations regarding participant eligibility, the Court is hesitant to substitute its own judgment for that of trustees. Accordingly, the court will do so only in cases in which the trustees' actions were clearly unreasonable. *See Jestings, supra*, 757 F.2d at 9; *Holland, supra*, 772 F.2d at 1148 ("it is necessary to ensure that primary responsibility rests with administrators 'whose experience is daily and continual, not with judges whose exposure is episodic and occasional'") (quoting *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1006 (4th Cir.1985)). If the administrator's judgment was made in good faith and was rational and reasonable in light of circumstances in existence at the time the judgment was made, the Court will not reject the administrator's decision, even if the Court might have found otherwise had it heard the same evidence de novo. *See Holland, supra*, 772 F.2d at 1148; *Anderson v. Ciba-Geigy Corp., supra*, 759 F.2d at 1522; *Jung, supra*, 755 F.2d at 712; *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209, 1211 (7th Cir.1983).

B. *Applying the Summary Judgment Standard*

■ Under Rule 56(c), Fed.R.Civ.P., summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." A dispute of fact is "material" if it "affects the outcome of the litigation," *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986) (quoting *Pignons S.A. de Mecanique v. Polaroid Corp.*, 657 F.2d 482, 486 (1st Cir.1981)), and "genuine" if there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *id.* (quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)). The burden is upon the moving party to affirmatively demonstrate that there is no genuine, material factual issue, and the Court is required to view the record in the light most favorable to the party opposing the motion and indulge all inferences favorable to that opposing party. *Id.* Where there remains the "slightest doubt" as to any material fact, summary judgment is inappropriate and must be denied. *United States v. Del Monte de Puerto Rico, Inc.*, 586 F.2d 870, 872 (1st Cir.1978).

In *Anderson*, the Court of Appeals for the Eleventh Circuit listed several factors to consider when applying the "arbitrary and capricious" standard, including, inter alia: (1) the uniformity of construction of the plan, (2) "fair reading" and the reasonableness of that reading, (3) the internal consistency of a plan under the interpretation given by the administrator, and (4) the factual background of the determination and inferences of lack of good faith, if any. *Anderson, supra*, 759 F.2d at 1522. In *Palino v. Casey*, 664 F.2d 854 (1st Cir. 1981), the Court of Appeals for the First Circuit applied an additional factor. "[C]hanges in a fund's eligibility rules must be made, and notice given subject to the limits of 'fundamental fairness.'" *Id.* at 859. Applying the *Anderson* and *Palino* factors to the plan administrator's decision to deny benefits at issue here, it is clear that there are factual issues in dispute. Accordingly, neither defendant nor plaintiffs are entitled to summary judgment as a matter of law.

The uniformity of construction of eligibility under the plan is at issue because the Court has seen no evidence regarding Joy's prior practices. Absent such evidence, the Court is unable to determine whether the administrator's decision in this instance was consistent with prior determinations of eligibility. *See Jung, supra*, 755 F.2d at 713; *Sly, supra*, 712 F.2d at 1213.

Nothing in the record indicates to a certainty that Joy acted in anything but good faith; however, the timing of events—the Revision II amendment, the ongoing efforts to sell the facility, the prominent notice of October 13 which acted to assuage plant unrest, the October 23 union meeting and agreement to accept lower wages, and then the October 27 *retroactive* revision of the policy—leaves the Court with the impression that Joy's reason for changing eligibility requirements is deservedly at issue and should be resolved at trial. In addition, Joy's good faith is in dispute because, although Joy assumed the posture of an administrator in accordance with 29 U.S.C. § 1002(16)(A)(ii), there is no evidence that Joy attempted to comply with any of the duties ERISA mandates for benefit plan administrators. At issue is whether and to what extent Joy adhered to reporting and disclosure requirements, *id.* at §§ 1021(a) and (b), and whether and to what extent Joy created and followed procedural mechanisms for claim determinations, *id.* at § 1133. *See Holland, supra*, 772 F.2d at 1149–50; *Blau, supra*, 748 F.2d at 1352–54.

Given the absence of evidence of Joy's past practices with regard to paying severance and the retroactive effect of Revision III, it is unclear whether employees were on notice they might not receive severance benefits. Manuals were not distributed to nonsupervisory employees, revision pages were not posted in prominent plant locations, the revised sections or paragraphs of revision pages were not uniformly marked with asterisks, and employees received no Plan Summary—all of which raise questions as to the extent to which employees other than supervisors were familiar with the plan prior to this litigation. *See Holland, supra*, 772 F.2d at 1150; *Sly, supra*,

712 F.2d at 1213. Whether plaintiffs read the October 13 notice, whether they understood it to apply to severance pay, whether they were aware of the contents of Revision II, or whether they were aware that Revision II was in effect at the time of the October 13 notice are unknown; thus, plaintiffs' knowledge of the plan and plaintiffs' concomitant expectations are at issue. *See Palino v. Casey, supra,* 664 F.2d at 859 (changes in eligibility requirements and notice to employees subject to limits of "fundamental fairness", i.e., whether notice provided employees with opportunity to develop other options). Finally, the issues of whether Joy's plan was internally consistent and whether the interpretation given by the administrators was a "fair reading" are intertwined with and dependent on the unresolved issues of fact—notice and good faith—discussed above. By implication, if the latter issues must be resolved at trial, and resolution of the former issues is dependent on such findings of fact, summary judgment is inappropriate.

### III. *Conclusion*

In conclusion, there are genuine issues of material fact as to whether Joy's actions in its capacity as an ERISA administrator and fiduciary were arbitrary and capricious. These issues of fact preclude the granting of summary judgment to either defendant or plaintiffs. Accordingly, defendant's motion and plaintiffs' cross-motion are herewith denied.

SO ORDERED.