[No. 14608-1-III.    Division Three.    January 30, 1997.]

MATT LARDY, ET AL., *Respondents,* v. UNITED STATES
TESTING COMPANY, INC., SEVERANCE PAY PLAN,
*Appellant.*

*Victoria L. Vreeland* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*Daryl D. Jonson* and *Cowan, Walker, Jonson & Moore* for respondents.

THOMPSON, J. — The trial court granted United States Testing Company's (USTC) employees' motion for summary judgment awarding them severance benefits under USTC's severance plan. USTC appeals, contending the severance plan provided severance benefits only upon job elimination resulting from a work force reduction. We reverse.

USTC operated a hazardous waste testing facility in Richland, Washington, employing approximately 100 people. In August 1990, it sold its Richland facility to IT Corporation (ITC). USTC's employees were informed of the impending sale and were given the option of continued employment with ITC. Sixty-five of the 105 USTC employees agreed to continue to work as employees of ITC. One employee, Van Pettey, had an employment contract with USTC which was assigned to ITC. The plaintiffs in this

case were employees who accepted employment with ITC and began working for it on August 21, 1990. These employees never missed a day of work due to the sale, continued with the same jobs, at the same facility, at the same or similar tasks, and for almost the same compensation.

At the time of the sale, USTC's severance policy had been in effect since April 1, 1990. The plan provided for severance pay in various amounts depending on the length of the particular employee's service. In order for an employee to be eligible for severance pay, the plan provided:

| REASON FOR TERMINATION | TERMINATION ALLOWANCE |
| --- | --- |
| Work force reduction | One (1) week base salary per full year of service, to a maximum of 17 weeks. Employees with less than one year of service will receive one (1) week severance. Employees will be awarded severance based on service with United States Testing Company, Inc. only. |
| Unacceptable job performance | No severance. |
| A serious violation of Company allowance, policy or practice. | No severance. |

Employees of USTC brought this action to recover severance benefits under USTC's severance plan. USTC and the employees both moved for summary judgment. On October 25, 1994, the trial court granted the employees' motion for summary judgment awarding them severance benefits under USTC's plan.

■ This court reviews an order granting summary judgment de novo and "engage[s] in the same inquiry as the trial court." *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982) (citing *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976)). The inquiry is "whether there is a genuine issue as to any material fact and whether the moving party is entitled to summary judgment as a matter of law." *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996) (citing *Fahn v.*

*Cowlitz County*, 93 Wn.2d 368, 373, 610 P.2d 857, 621 P.2d 1293 (1980)). This court "must consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party." *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). If a dispute exists as to a material fact, then summary judgment is not proper. *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 65, 837 P.2d 618 (1992). If, on the other hand, reasonable minds could only reach one conclusion, then summary judgment should be granted. CR 56(c); *LaMon v. Butler*, 112 Wn.2d 193, 199, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989).

■ The standard of review governing severance plan benefits under 29 U.S.C.A. § 1132(a)(1)(B) (West 1985) is de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). USTC's severance plan does not indicate that a different standard is to be used. Accordingly, this court's review of the plan is de novo.

A vast number of federal decisions have addressed whether the sale of a business is a triggering event under a particular severance plan which will entitle employees to severance benefits. Many of these decisions are of minimal assistance because they are based on the specific language of a particular plan. Some decided prior to *Firestone* are of limited value because they applied an arbitrary and capricious standard rather than the de novo standard adopted in *Firestone*.

Of the numerous cases dealing with this issue, *Allen v. Adage, Inc.*, 967 F.2d 695 (1st Cir. 1992) is more similar to the case now at issue. The plan in *Allen* provided, in part, "[i]n the event that an involuntary termination is caused by reduction-in-force the following guidelines have been established to provide consistency in severance provided to employees." *Id.* at 697. The plan then listed the number of years of service and the corresponding amount of severance salary. *Id.* USTC's plan similarly provides that if the

reason the employee was terminated was due to a work force reduction, then severance pay would correspond to the time the employee worked for USTC. Neither plan included any additional conditions nor defined the key phrase "reduction-in-force" or "work force reduction." Both were silent regarding the sale of the business.

■ USTC's plan uses the phrase "work force reduction" while *Allen* refers to "reduction-in-force." The difference in terminology is not significant. The issue in this case, as in *Allen*, is whether the sale of the Richland facility constituted a "work force reduction" under the terms of the severance plan. Although the plan does not mention whether severance pay is or is not due on sale of the business, the trial court found that "the clear language of the severance policy" required granting the employees' motion for summary judgment. Under a de novo review, this court is not bound by that finding.

■ The language of USTC's plan is not ambiguous. Employees may receive severance benefits only if terminated due to a work force reduction. It is clear that the employees were not part of a work force reduction. Although not defined in this jurisdiction, the Sixth Circuit Court of Appeals has stated that a work force reduction occurs "when business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878 (1990). USTC has technically eliminated positions within the company, but the positions of these employees at the Richland facility remain intact.[1] They continue to be filled by the same employees doing the same work, but for ITC instead of USTC. This is not a work force reduction.[2] "The sale of a business is qualitatively

---

[1]There were other employees who were not retained by the new company. They were given severance pay.

[2]*See, e.g., Allen*, 967 F.2d at 702 (citing *Adams v. Ampco-Pittsburgh Corp.*, 733 F. Supp. 998, 1001 (W.D. Pa. 1989)) (finding that the analogous phrase "reduction-in-force" has been deemed to typically mean a permanent layoff "undertaken for budgetary or economic reasons").

different from a reduction in force or elimination of a specific position." *Lesman v. Ransburg Corp.*, 719 F. Supp. 619, 621 (W.D. Mich. 1989), *aff'd*, 911 F.2d 732 (6th Cir. 1990).

Moreover, it is important to look to the specific purpose of USTC's plan as well as the purpose of severance plans generally. *Allen*, 967 F.2d at 702. In *Allen*, the court found that the usual purpose of severance plans is, "first and foremost, to provide employees with a buffer against the privations which so often attend unforeseen layoffs." *Id.* (citations omitted). "[I]n the absence of language indicating otherwise, . . . a severance pay plan is geared to sheltering loyal workers from a precipitous loss of income." *Id.* Finally, the court reasoned that "[i]t is surpassingly difficult to fathom why an employer would provide a trouvaille for employees who, when separated from its service, are simultaneously transferred en masse, by prearrangement, to another employer's payroll, without any temporal hiatus or significant diminution of earnings or benefits." *Id.* (citing *Awbrey v. Pennzoil Co.*, 961 F.2d 928, 931-32 (10th Cir. 1992); *Bradwell v. GAF Corp.*, 954 F.2d 798, 801 (2d Cir. 1992)).

The stated objective of USTC's plan was "[t]o ensure equitable treatment of employees being terminated from the company." The employees contend that the plan is meant to reward employees for loyal service to the company. USTC contends that the plan is only meant to serve as a financial safety net. Neither of these interpretations appears obvious from the plain language of the plan. The general purpose of severance plans is to "tide an employee over while seeking a new job . . . ." *Sly v. P.R. Mallory & Co.*, 712 F.2d 1209, 1211 (7th Cir. 1983) (quoting the district court's opinion). USTC's denial of severance benefits to employees who remained employed by ITC did not amount to inequitable treatment,[3] especially since the employees did not lose income or their jobs. Several courts have found

---

[3]Although ITC did not grant credit to employees for severance that they accrued under USTC's plan, "severance benefits are unaccrued, unvested benefits." *Young v. Standard Oil (Indiana)*, 849 F.2d 1039, 1045 (7th Cir.), *cert. denied*, 488

that providing severance benefits in similar circumstances constitutes a windfall.[4] Without a specific directive in the severance plan providing for severance pay under these circumstances, this court will not impute such an obligation on the employer.

USTC also contends that Mr. Pettey, whose employment contract with USTC was assigned to ITC, is not entitled to severance benefits. USTC contends that since his employment contract was assigned, he was not terminated and therefore is not eligible for severance benefits.

Mr. Pettey's situation is virtually identical to that of the other employees of the Richland facility: the same job at the same salary. Similar to the other employees, even if Mr. Pettey's assignment was considered a termination, it was not the result of a work force reduction. Absent a work force reduction, he is not eligible for severance benefits under the plan.

We reverse and grant USTC's motion for summary judgment dismissing the employees' claims.

SCHULTHEIS, A.C.J., and MUNSON, J. Pro Tem., concur.

Review denied at 132 Wn.2d 1008 (1997).

---

U.S. 981 (1988). Employers can unilaterally amend or eliminate severance benefits provided they are funded solely by the employer without any employee contribution. *Id.* (citing *Sutton v. Weirton Steel*, 724 F.2d 406, 410 (4th Cir. 1983), *cert. denied*, 467 U.S. 1205 (1984)).

[4]*See, e.g., Sejman v. Warner-Lambert Co., Inc.*, 889 F.2d 1346, 1350 (4th Cir. 1989) (finding that to award "severance pay to persons who never changed their jobs and were never out of work" would seem to be a windfall), *cert. denied*, 498 U.S. 810 (1990); *Lakey v. Remington-Arms Co.*, 874 F.2d 541, 545 (8th Cir. 1989) (finding that "[b]ecause the change in employer . . . caused the employees no lack of work, severance benefits, if granted, would simply have been a windfall for the newly rehired employees"); *Jung v. FMC Corp.*, 755 F.2d 708, 714 (9th Cir. 1985) (quoting *Sly*, 712 F.2d at 1211); *Sly*, 712 F.2d at 1211 ("award[ing] severance benefits . . . would result in a windfall to the employees who retained their positions with the purchaser of the going concern . . ."); *Aquin v. Bendix Corp.*, 637 F. Supp. 657, 663 (E.D. Mich. 1986) (awarding severance benefits would be to "grant a windfall to plaintiffs").