724 F.Supp. 493 (1989)
Clyde J. BOWMAN, Jr., et al., Plaintiff,
v.
The FIRESTONE TIRE & RUBBER COMPANY, Defendant.
No. C88-1965-A.
United States District Court, N.D. Ohio, E.D.
July 12, 1989.
*494 William R. Holland, Akron, Ohio, Philip W. Duer, Nashville, Tenn., for plaintiff.
John E. Holcomb, Millisor & Nobil, Akron, Ohio, for defendant.

ORDER
SAM H. BELL, District Judge.
Pending before the court are motions filed by defendant, The Firestone Tire & Rubber Co.'s (Firestone). The first is a motion for summary judgment on plaintiffs' cause of action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. and the second is defendant's motion for summary judgment relating to plaintiffs' pendent causes of action. The plaintiffs have filed their opposition to summary judgment and defendant its reply. The parties have supported their motion with affidavits, depositions and attached case law.

STATEMENT OF FACTS
The case at bar is part of the saga of the decline of a great American industry and the resultant price paid by its employees. In the course of time, Firestone, a local industrial giant with its flagship post in the rubber capital, Akron, was caught up by the then prevailing economic forces. Profitability declined, sales dwindled and management acted to save the saveable and set a new course and direction for the company. Firestone embarked on a course of reorganization that included early retirement incentives to the workforce; reduction in work force, i.e., terminations; divestiture of unprofitable concerns; and the culmination of this metamorphosisFirestone being "bought" by the Japanese competitor, Bridgestone, Inc. and moving its headquarters to Chicago.
This action grew out of the June 30, 1986 sale of the Firestone Retread Division to *495 the Pro-Tread Corporation (Pro-Tread) from Michigan. At one time the Retread Division boasted over 200 plants, but that number dwindled to 25 and registered losses in the millions (in 1984 the Retread Division had a loss of $1,934,601.00, and in 1985 $1,558,450.00). Frye Affidavit. Under the terms of the divestiture, the purchaser, Pro-Tread, immediately employed all of defendant's Retread Division employees in the same location, with the same rate of pay, performing the same essential functions. Thus, the Retread division employees did not miss a day of work.
Against this backdrop, the plaintiffs are:
Clyde J. Bowman (Bowman),  senior analyst of budgeting and planning for the Firestone Retread Products Division, located in Akron, classified as an "Akron other than Field Salaried Employee," grade level "A 12"; a Firestone employee since 1957.
Donovan C. Smith (Smith),  retread products plant manager for Firestone's production facility in Nashville, Tennessee. Smith was classified as "field" level salaried employee.
J.V. Dunn (Dunn)  local retread plant manager for Firestone's production facility located in Charlotte, North Carolina and who had held that job since 1985. Like Smith, Dunn was designated as a "field" level salaried employee.
In their complaint, the plaintiffs advance several claims:
Count I is a common law claim of breach of implied contract and promissory estoppel, based on the alleged promises and assurances of termination pay and back pay contained in various versions and editions of salaried employee handbooks (Firestone Handbooks) and job posting policies.
Count II alleges a violation of Ohio Revised Code § 4101.17 (the OADEA), contending that the defendant's wide use of Age Data Forms, coupled with the fact that the plaintiffs were not transferred, bumped or downgraded to other Firestone jobs for which they were qualified resulted in age discrimination in violation of the OADEA.
Count III is a claim under 29 U.S.C. § 1132(a)(1)(B), ERISA, as it relates to denial of termination or severance pay to plaintiffs.
Count IV is also an ERISA claim under 29 U.S.C. §§ 1021-1025 and 1140, alleging non-disclosure of the benefit plans to the plaintiffs as mandated by the statute, and interference with protected rights.
Following the sale to Pro-Tread, all 275 retread division employees were transferred to Pro-Tread and plaintiffs admitted that no one that they could recall was allowed to "bump" or bid into a different, available Firestone position. (Dunn Dep. 26; Smith Dep. 24).
Plaintiff Bowman transferred to Pro-Tread and continued to earn the same salary that he earned at Firestone; moreover, because of his age and years of service he retired from Firestone effective July 1, 1986 (sale date June 30, 1986) and started receiving $1,008.33 per month plus comprehensive medical insurance benefits which were to continue for the remainder of his life. (Bowman Interog. 18(a), (b), (c), (d)). He made two written requests for Firestone severance benefits (Bowman Dep. Exhs. E, F, G, H), but they were both denied.
Plaintiff Smith likewise transferred to Pro-Tread and also elected to receive Firestone pension benefits of $645.65 per month, commencing on the day he was first employed by Pro-Tread at the same rate, same position and same location. Plaintiff Dunn was also employed by Pro-Tread at the same rate, position and location as he had been with Firestone.
Much of this action centers and revolves around the so-called "Firestone Handbooks," employee manuals produced and distributed by Firestone. First, it is important to establish that there were different and separate handbooks for the "Akron grade salaried personnel" (Bowman) and the "Field" personnel, which apply to plaintiffs Dunn and Smith. These handbooks were periodically updated, (Dunn Dep. 27, Smith Dep. 55, Bowman Dep. 58).
Plaintiffs rely primarily on the 1975 handbooks, but plaintiffs acknowledged that they were aware of and received the *496 updated versions from 1984 and 1985 as well. (Dunn Dep. 27; Smith Dep. 55). Further, depending on plaintiffs' status as either field or Akron grade salaried employees, they were governed by different personnel policies, procedures, manuals and handbooks. (Coles' Aff. ¶¶ 2, 5, Exh. C; Zemla Aff. ¶ 5, Exh. C).
Defendant moved to separate plaintiffs and sever claims because such different manuals and policies apply to them. Furthermore, defendant moved for summary judgment on the ERISA claims in separate motions, one motion for plaintiff Bowman and another for plaintiffs Smith and Dunn. However, upon examining the numerous handbooks and manuals the court found that there were only two major differences in the employment conditions. (1) "Akron" grade salaried employees had posting/bidding rights, that the "Field" salaried employees did not have. (2) As to termination pay, if eligible, Akron grade employees were to receive ten days pay for every year of credited service while "field" employees were to get thirty days pay per every five years of credited service. There were also certain differences in the language and detail of the different handbooks and manuals, but for the purposes of this summary judgment motion the court will address them together. As to the pendent state claim, the defendant used one motion for summary judgment regarding all three plaintiffs. The court will address the ERISA claims first and then the pendent state claims.

LAW AND DISCUSSION
Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that as a matter of law, it is entitled to summary judgment. In reviewing a motion for summary judgment, a court must consider the pleadings, related documents and evidence and all reasonable inferences in a manner most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Smith v. Hudson, 600 F.2d 60 (6th Cir.1979); cert. dismissed, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); Board of Ed. Cincinnati v. Department of H.E.W., 532 F.2d 1070 (6th Cir.1976). The inquiry performed at this stage is whether a trial is required to resolve genuine factual issues. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986) (citations omitted). See, also, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

ERISA Claims

I. Controlling Handbooks and Their Terms:
Any initial inquiry must determine which employee handbooks or personnel manuals governed at the time of the Retread Division divestiture. Plaintiffs claim under the 1975 handbook which was closely analyzed both at appellate and Supreme Court level in the Bruch v. Firestone case, 828 F.2d 134 (3d Cir.1987); Firestone Tire & Rubber Co. v. Bruch, ___ U.S. ___, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Defendants, however, argue that at the time of the June 30, 1986 divestiture the updated versions of these documents were in effect and governed the rights of the plaintiffs. The recent opinion of the Sixth Circuit Court of Appeals in Brown v. Ampco-Pittsburgh Corp., 876 F.2d 546 held that the welfare benefit plan defined in the documents in effect at the time of the termination governs the rights of the employees. In Brown the issue was when exactly were the laid off workers "terminated." They were laid off when the 1984 plan was in effect, but were allegedly "formally terminated" when the 1986 plan was already in effect. The court of appeals remanded the case to the district court to determine under the new Bruch de novo standard of review when the "termination" occurred. As the court said:

*497 We conclude that both the 1984 and 1986 plans are valid. The question is when did the plaintiffs' right to termination allowances vest. (Emphasis added). Id. at 551.
In the case at bar there is no question when the termination/transfer occurred  on June 30, 1986, upon Pro-Tread's purchase of the Retread Division as an ongoing concern. Thus, the employee welfare plan in effect at the time of the divestiture governs the plaintiffs' rights. In the case of plaintiff Bowman, the plan is set out in: (1) the June 1, 1984 Firestone Tire & Rubber Company Salaried Personnel Manual, (Exh. A to Zemla Aff.). (2) the August 1, 1985 Firestone Tire & Rubber Company Personnel Manual. (Exh. B to Zemla Aff.). (3) the August 1, 1985 Firestone Tire & Rubber Company Termination Pay and Benefits Plan for Salaried Employees Other than Field Salaried Employees. (Exh. C. to Zemla Aff.). As to plaintiffs Smith and Dunn, their rights were governed by: (1) Firestone's Field Personnel and Procedures Manual, effective 1982. (Exh. A to Coles' Aff.); (2) Firestone's Employee Handbook, August 19, 1984. (Exh. C. to Coles' Aff.).[1] The terms contained in these documents regarding termination pay, specifically in case of a divestiture, are important to review.
The June 1, 1984 Firestone Tire & Rubber Company Salaried Personnel Manual (Exh. A. to Zemla Aff.) states the purpose of termination pay and then expressly excludes divestiture from the situations covered by termination pay:
Our Company has established a Termination Pay Plan with the goal of minimizing the economic stress of certain involuntary terminations and helping the employee through the period of presumed unemployment. This benefit depends upon the type of termination, employee salary and years of credited service at the time of termination.
For the purposes of Termination Pay, we do not mean the following:
Resignation
Retirement
Exhaustion of Rights
Divestiture
Discharge
Death
* * * * * *
Divestiture means following the sale or other disposition of a Firestone facility or its assets, withdrawal from employment or refusal of an offer of employment by the purchaser or successor to Firestone at such facility. No termination pay or benefits.
The next manual, effective August 1, 1985 again states the same policy: (Exh. B to Zemla Aff.).
The purpose of this policy and appropriate termination pay and benefit plan is to ease the economic stress of loss of employment by providing Eligible Employees with termination pay and other benefits in accordance with the following provisions.
* * * * * *
No termination Pay shall be made by Firestone for a Discharge, Resignation, Retirement, Exhaustion of Rights, Divestiture or Restructuring.
* * * * * *
(n) "Divestiture" meaning withdrawal from employment with Firestone following the sale or other disposition of a Firestone facility or of a Firestone business and/or its assets due to (i) acceptance of employment with the Purchaser or Successor, or (ii) refusal of an offer of employment by the Purchaser or Successor at such facility, or (iii) refusal of an offer of employment by some subsidiary or affiliate of Firestone at not less than the same grade level and base salary and which employment offer does not require geographical location.
In addition, the salaried personnel manual at this time clearly reserved the right for *498 Firestone to interpret the provisions established thereunder:
Firestone shall promulgate any rules and regulations which it deems necessary in order to carry out the purposes of these Plans, or to interpret the terms and conditions of these Plans; provided however, that no rule, regulation or interpretation shall be contrary to the provisions of these Plans. The rules, regulations and interpretations made by Firestone shall, subject only to the claims procedure outlined in Section 8.4.3, hereof, be final and binding upon any employee or former employee of Firestone, or any successor in interest of either.
Firestone shall determine the rights of any employee or former employee of Firestone to any termination pay and/or benefits hereunder.
* * * * * *
Firestone reserves the right to discontinue or terminate these plans in whole or in part without prior approval of any employee or former employee of Firestone.
The Firestone Tire & Rubber Company Termination Pay and Benefits Plan for Salaried Employees Other Than Field Salaried Employees, (Exh. C to Zemla Aff.), was a booklet which was distributed to all Akron level salaried employees in 1985 (Zemla Aff. at p. 4-5). This booklet also expressly excluded divestiture from a situation where termination pay is due:
No termination payment will be made as provided in Paragraph 1 if
(a) following the sale or other disposition of a Firestone facility or of a Firestone business and/or its assets, you are employed or offered employment by the purchaser thereof, of if you refuse an offer of employment by a subsidiary or affiliate of Firestone at not less than the same grade level and base salary and which employment offer does not require geographical relocation;
Additionally, the Firestone Termination Pay and Benefits Plan for Salaried Employees Other Than Field Salaried Employees in August, 1985, clearly reserved the right to Firestone to interpret its plan:
Firestone shall determine the rights of any employee or former employee of Firestone to any termination pay hereunder.
* * * * * *
Firestone shall promulgate any rules and regulations it deems necessary in order to carry out the purposes of the plan or to interpret the terms and conditions of the plan; provided however, that no rule, regulation or interpretations made by Firestone shall, subject only to the claims procedure, be final and binding on any employee or former employee of Firestone or any successor in interest of either.
Mr. Noel Coles was personnel manager for field operation for Firestone's sales and service group. (Coles' Aff. at 1). He acted as personnel representative for plaintiffs Smith and Dunn. Id. His sworn affidavit at 2 states that field employees had no posting and bidding privileges available to them, as a matter of fact they would not even have knowledge of posting/bidding positions. Id. Mr. Coles' sworn affidavit has several attachments as well. Exhibit A to the Coles' Aff. is Firestone's Field Personnel and Procedures Manual effective 1982. As Mr. Coles states, this manual did not specifically address the availability of severance pay in a divestiture. Id. at 2. But Mr. Coles gave his sworn statement regarding the Firestone policy toward termination pay in a divestiture situation.
Firestone and myself as personnel representative for field level employees, would turn to provisions established in the Salaried Personnel Manual for guidance. I also understood Firestone's past practice was to deny termination pay to employees, both field and Akron, who were immediately employed by a purchaser of a Firestone division or a department with substantially the same or similar salary or level of pay.
Id. at 2-3.
The Firestone Employee Handbook, effective August, 1984, was limited to and distributed to full-time field employees. *499 Id. at 3. This booklet addresses the termination pay issue on page 15, where it says:
TERMINATION PAY
If your service is discontinued prior to the time you are eligible for pension benefits, you will be given termination pay if released because of a reduction in work force or if you become unable to perform your job.
Termination pay will generally be thirty calendar days pay for each five years of continuous service. No termination pay will be paid in conjunction with the sale of a facility where you are offered a job with the buyer. (emphasis added).
Further, this notice ends the booklet:
IMPORTANT NOTE
Firestone hopes and expects to continue its benefits plans indefinitely, but reserves the right to amend or end them at any time. If you have questions or need additional information, please consult your supervisor. Your supervisor will contact the appropriate office for clarification and a response.

II. The Bruch v. Firestone Case:

A. Appellate Level
In Bruch the court examined the availability of termination pay in a divestiture situation under the 1975 version of Firestone's Handbook for Salaried Employees, that said:
If your service is discontinued prior to the time you are eligible for benefits, you will be given termination pay if released because of a reduction in work force or if you become physically or mentally unable to perform your job.
The amount of termination pay you will receive will depend on your period of credited company service.
Bruch v. Firestone, 828 F.2d 134, 146 (3d Cir.1987). Thus, the issue at the heart of Bruch was whether divestiture constitutes "reduction in force" and qualifies the employees of the sold division to termination pay. Firestone denied such termination pay benefits and the district court reviewed the denial under the "arbitrary and capricious" standard and granted defendant's motion for summary judgment. On appeal the Third Circuit Court of Appeals found that inasmuch as Firestone, the employer, was the fiduciary and administrator and since its impartiality in managing the Welfare Plan cannot be assured, it does not deserve such a deferential standard of review. The court held that a de novo standard of review applies. Remand was ordered and the district court was instructed to apply principles of contract law in its application of the de novo standard of review to Firestone's denials of termination pay in a divestiture situation.
The case at bar is quite distinguishable from the Bruch fact pattern. Here the Welfare Plan terms as set out in several manuals and handbooks as to Akron grade salaried employees clearly stated that termination pay is not available to employees who are immediately employed by the purchaser in a divestiture situation. And even the field level salaried employees were told so in their Employee Handbook on p. 15.

B. Supreme Court Level
The United States Supreme Court focused on two issues in Bruch: (1) the applicable standard of review, and (2) who is considered a participant under ERISA. The Supreme Court, applying trust principles, held that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) must be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe plan terms. Firestone's decisions under its termination pay plan of 1975 were held to be subject to de novo review (emphasis added). Firestone Tire & Rubber Co. v. Bruch, ___ U.S. ___, ___, 109 S.Ct. 948, 956, 103 L.Ed.2d 80, 95 (1989).

III. The Standard of Review:
Therefore, in applying the Bruch holding to the case at bar we must first determine whether the benefit plan as described in the various booklets and manuals detailed above explicitly "gives the administrator or fiduciary discretionary authority *500 to determine eligibility for benefits or to construe terms of a plan."
This court concludes that regarding Akron grade salaried employees, including plaintiff Bowman, it did.
The summary description of "Termination, Pay and Benefits Plan (Exh. C, Zemla Aff.) effective August 1, 1985, applied to "Salaried Employees Other Than Field Salaried Employees" and specifically and unambiguously preserved Firestone as the plan interpreter, consistent with Bruch:

Interpretation and application of this policy to a particular circumstance shall be made by Firestone. If you have any questions concerning this Plan and the claims and appeal procedure hereunder or any other Firestone benefit, please contact your personnel representative.
THIS DOCUMENT COVERS ONLY TERMINATION. IT CAN BE CHANGED, REVOKED, DISCONTINUED, OR TERMINATED AT ANY TIME.
* * * * * *

Firestone shall determine the rights of any employee or former employee of Firestone to any termination pay hereunder. Any employee or former employee of Firestone who believes that he or she is entitled to receive termination pay under the plan, including termination pay other than that initially determined by the Company, may file a claim in writing within 90 days of the eligible employee's Personnel Department. Firestone shall no later than 90 days after the receipt of a claim either allow or deny the claim in writing.
* * * * * *
Plan Administration.
The plan shall be administered by Firestone, which shall be the name fiduciary under the plan. Firestone may delegate any of its administrative duties including, without limitation, duties with respect to the processing, review, investigation, approval and payment of benefits to a named administrator or administrators. Benefits are payable from general assets of the company.

Firestone shall promulgate any rules and regulations it deems necessary in order to carry out the purposes of the plan or to interpret the terms and conditions of the plan; provided, however, that no rule, regulation or interpretation shall be contrary to the provisions of the plan. The rules, regulations and interpretations made by Firestone shall, subject only to the claims procedure, be final and binding on any employee or former employee of Firestone or any successor in interest of either.
Firestone reserves the right at any time, without the approval of any employee or former employee, to change, modify, amend or terminate the plan in any particular manner whatsoever.
(Zemla Aff. ¶ 5; Exh. C at pp. 1-5). (emphasis added)
In addition, the internal Firestone Salaried Personnel Manual also reserved the right for Firestone to interpret the provisions established in its severance benefit plan:
Firestone shall promulgate any rules and regulations which it deems necessary in order to carry out the purposes of these Plans or to interpret the terms and conditions of these Plans; provided however, that no rule, regulation or interpretation shall be contrary to the provisions of these Plans. The rules, regulations and interpretations made by Firestone shall, subject only to the claims procedure outlined in Section 8.4.3, hereof, be final and binding upon any employee or former employee of Firestone or any successor in interest of either.
Firestone shall determine the rights of any employee or former employee of Firestone to any Termination Pay and/or Benefits hereunder.
* * * * * *
Firestone reserves the right to discontinue or terminate these Plans in whole or in part without prior approval of any employee or former employee of Firestone.
*501 (Zemla Aff. ¶ 4; Exh. B. at p. 8). (emphasis added)
In light of all this language and the teachings of Bruch, it is appropriate that Firestone's denial of termination payment to plaintiff Bowman will be reviewed under the arbitrary and capricious standard.
As to field grade level salaried plaintiffs, Smith and Dunn, the applicable standard is not as clear. The booklets furnished to field grade level salaried employees did not give Firestone the administrator or fiduciary, discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Therefore, the court concludes that under Bruch, supra, a de novo standard of review applies to Smith and Dunn's denial of termination pay.

IV. Review of ERISA Claims Denial for Termination Pay
As plaintiffs point out there is case law supporting the theory that termination pay is due whenever an employee ceases to work for the employer (without having been fired for cause), even through the employer has sold the operation in which the employee worked and the operation's new owner has offered to retain the employee in his job. This is to compensate the employee for possible lower pay or benefits. See Chapin v. Fairchild Camera & Instrument Corp., 31 Cal.App.3d 192, 107 Cal.Rptr. 111 (1st Dist.1973); Mace v. Conde Nast Publications, Inc., 155 Conn. 680, 237 A.2d 360, 363 (1967); Dahl v. Brunswick Corp., 277 Md. 471, 356 A.2d 221 (1976).
There is also, however, a long line of federal court cases, including Sixth Circuit opinions, that hold the opposite and support the contention that termination pay is payable only in case of termination resulting in unemployment. Unemployment thus becomes a prerequisite to termination pay. The Third Circuit Court of Appeals in Bruch v. Firestone, supra, noted these cases:
... allowing employers to refuse to provide severance pay when the employer sells the operation and the new owner offers all employees the opportunity to work for him. See, e.g., Holland v. Burlington Industries, 772 F.2d 1140 (4th Cir.1985), affirmed mem. 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, cert. denied, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986); Pabst Brewing Co. v. Anger, 784 F.2d 338 (8th Cir.1986) (per curiam); Blakeman v. Mead Containers, 779 F.2d 1146 (6th Cir.1985). A number of cases reached this result in construing the very termination pay plan at issue here. See Adcock v. Firestone Tire & Rubber Co., 616 F.Supp. 409 (M.D.Tenn.1985), affirmed in relevant part 822 F.2d 623 (6th Cir.1987); Davidson v. Firestone Tire & Rubber Co., 84-1215 (W.D.Tenn. May 30, 1986), [Available on WESTLAW, DCT database 1986 WL 15770], Sisk v. Firestone Tire & Rubber Co., 670 F.Supp. 695 (E.D. Mich.1986).
Bruch v. Firestone Tire & Rubber Co., 828 F.2d 134, 146 (3d Cir.1987).
Recently the Eighth Circuit Court of Appeals affirmed the trial court's summary judgment order in a similar case Lakey v. Remington Arms, 874 F.2d 541 (8th Cir.1989). There too, the documents delineating defendant's policy concerning termination pay were clear and unambiguous and the court found that "the language in the policy document requiring a lack of work as a prerequisite to severance pay is clear.... Because the change in employer from RAC to Olin caused the employees no lack of work, severance benefits, if granted, would simply have been a windfall for the newly rehired employees." The court went on to conclude that the denial of severance benefits was fair and reasonable, consistent with prior interpretations, and not arbitrary and capricious. This court agrees. In light of prior case law, and the clear explicit language in the employee handbooks and manuals of which plaintiff Bowman was or should have been fully aware, Firestone's denial of his request for termination pay was not arbitrary and capricious and thus not a violation of § 1132(a)(1)(B) of ERISA.
*502 To determine whether defendant Firestone violated § 1132(a)(1)(B) of ERISA regarding denial of termination pay to plaintiffs Dunn and Smith the court's de novo review will scrutinize the evidence and information before the court.
(1) As already determined there is strong case law supporting the contention that severance pay is not due when the employee is immediately rehired in a divestiture and is paid at the same rate, at the same location, performing the same duties. Blakeman v. Mead Containers, 779 F.2d 1146, 1149 (6th Cir.1985).
(2) The Firestone Employee Handbook, effective August, 1984, distributed to field grade salaried employees encompasses, in clear unambiguous terms, the statement:
No termination pay will be paid in conjunction with the sale of a facility where you are offered a job with the buyer.
(Coles' Aff. 5, Exh. C). Moreover, both plaintiffs admitted that they received periodic updates of this handbook.
(3) The record gives evidence of consistent past practice on defendant's part not to award termination pay upon divestitures of its other divisions. Plaintiffs submitted no evidence to the court that would suggest otherwise. This consistent, uniform practice is strongly supported by the court's own review of numerous cases in which Firestone was repeatedly sued over this established policy that termination/severance pay was paid only to ease a period of unemployment.
It appears that Firestone did not comply with the ERISA requirements of publishing and furnishing summary benefit plan descriptions to its field grade salaried employees. Further, it is not clear from the pleadings and evidence before this court whether Firestone complied with the filing requirements with the Secretary of Labor, as mandated under ERISA.
Balancing those procedural deficiencies with the clear unambiguous language in the 1984 Employee Handbook, however, and considering the status of plaintiffs Dunn and Smith as operation managers of two retread plants who administered and informed their subordinate employees about defendant's benefit plan, this court concludes that defendant Firestone did not violate § 1132(a)(1(B) of ERISA in denying plaintiff's termination benefits. Furthermore, plaintiffs produced no evidence to show how any of defendant's technical violations of ERISA as to filing and publishing summary plan descriptions resulted in any prejudice to them. Thus, this court agrees with the holding of Judge Graham in Garavuso v. Shoe Corporation of America Industries, 709 F.Supp. 1423 (S.D.Ohio, 1989): "In the absence of reliance or prejudice to the claimant, only the Secretary of Labor has standing to complain about violations of ERISA's procedural requirements." Aquin v. Bendix Corp., 637 F.Supp. 657 (E.D.Mich.1986). The court holds upon de novo review of the plan terms as those terms relate to plaintiffs Smith and Dunn, that plaintiffs do not qualify for termination pay under Firestone's Welfare Benefit Plan and that the evidence presented by plaintiffs does not present a genuine issue of material fact in that regard. Therefore, Firestone is entitled to summary judgment on Count III, regarding all plaintiffs.

V. Count IV-29 U.S.C. §§ 1021-1025; § 1140
Plaintiff's second ERISA claim alleges violation of 29 U.S.C. §§ 1021-1025 "Reporting and Disclosure Requirements" and violation of § 1140 "Interference with Protected Rights." As has been noted above regarding § 1132(a)(1)(B) violations concerning plaintiff Bowman there were clear and unambiguous descriptions of defendants termination pay policy in divestiture situations. Moreover, regarding Akron grade salaried employees the defendant furnished to the employees updated detailed summary plan descriptions in "Termination Pay and Benefits Plan" booklet. (Zemla Aff. 5, Exh. C). This booklet expressly complied with § 1021 Duty of Disclosure and Reporting and § 1022 Plan description and summary plan description requirements.
As to field grade salaried plaintiffs Smith and Dunn, indeed, this opinion found *503 non-compliance with the formal reporting and disclosure requirements, but held that these plaintiffs failed to prove any prejudicial reliance or harm caused by such violation of §§ 1021-1022.
Considering the filing requirements with the Secretary of Labor, the court has not been provided with evidence on Firestone's failure to comply. However, the court has already concluded that only the Secretary of Labor has standing to complain about violations of ERISA's procedural requirements, supra.
Moreover, none of the plaintiffs allege that they requested information about their termination pay benefit availability, or about other benefits and failed to receive information or response. Plaintiff Dunn concedes that he never requested any severance pay or other plan information from Firestone. (Dep. Dunn at 22-24). Plaintiff Smith alleges that he asked once whether he would be eligible for defendant's severance benefits if he refused employment with Pro-Tread, and upon receiving a negative answer, never inquired about it again until this lawsuit was filed. (Dep. Smith at 18). Further, again it is important to remember that Dunn and Smith in their management capacities were responsible for administering the very policies and procedures involved in their claims of non-disclosure under ERISA. Under these circumstances the court holds that defendant did not violate §§ 1021-1025 of ERISA regarding these plaintiffs.
ERISA's § 1140 protects employees from discrimination or retaliation "... for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan ..." 29 U.S.C. § 1140. Plaintiffs have submitted no evidence to this court that they have been victims of discrimination or retaliation because either exercised any right which may or may not have existed under Firestone's severance benefit plan. Like all other 272 employees of the Retread Division these employees were informed of the divestiture and on July 1, 1986 started working for Pro-Tread at the same pay rate, in the same positions, in the same locations. Plaintiff Dunn did not even attempt to pursue a termination pay claim until this action was filed. (Dunn Dep. 23-24). Plaintiff Smith made one inquiry, received a negative reply and commenced his position with Pro-Tread like all the other Retread Division employees. (Smith Dep. 17-18). Furthermore, as to plaintiff Smith's claim of interfering with the attainment of his rightsthe evidence before the court shows that Smith elected to receive immediately his vested Firestone benefits, including monthly payments of $646.65. (Plaintiff Interrog. 19(a), (b), (c), (d)). Plaintiff Dunn was five months short of the required twenty-five years of credited Firestone service that would entitle him to fully vested pension benefits. (Dunn Dep. at 22). He made several inquires about that issue and his inquires were answered, although not to his satisfaction. Although this court sympathizes with his predicament, it refuses to reach the conclusion that Firestone sold the Retread Division to prevent plaintiff Dunn's pension from vesting.
Plaintiff Bowman also decided to start drawing his vested pension benefits at the sum of $1,008.33 per month. (Bowman Interrog. 18(a), (b), (c), (d)). Like the other plaintiffs, he too continued his employment with Pro-Tread, without any interruptions or changes. Thus, the court finds no evidence of any interference with "the attainment of any right" to which he might be entitled. Plaintiff Bowman first requested ERISA severance benefits on August 15, 1986, a month and a half after the divestiture took place. Thus, rationally and chronologically there could be no discrimination or retaliation involved in the divestiture, for his much later inquiry. Accordingly, the court concludes that there is no genuine material issue of fact, and therefore defendant's motion for summary judgment on the §§ 1021-1025, and § 1140 of ERISA are granted.

VI. Pendent State Claims:

A. Count IImplied Contract and Promissory Estoppel
Plaintiffs allege that by promulgating Firestone handbooks and job posting policies, *504 and various oral promises to increase loyalty, dedication and diligence among employees defendant Firestone caused plaintiffs to detrimentally rely on them and forsake other more lucrative and/or secure employment. Complaint at ¶ 12. Plaintiffs claim is based upon common law principles of implied contract and promissory estoppel.
We begin our analysis by recognizing that here too plaintiffs are basically claiming that they are entitled to termination pay under these common law theories. Second, the court must again clarify that, as already stated, the plaintiffs rights were governed by the employee benefit plans in effect at the time of the divestiture, not the 1975 version. Both parties concede that 29 U.S.C. § 1001, et seq., ERISA governs this case. Further, defendant contends that ERISA preempts these common law claims for breach of implied contract and promissory estoppel. This court agrees. 29 U.S.C. § 1144(a) is broadly construed to encompass any law which "relates to" an employee benefit plan. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983). The Firestone severance pay plan is an employee benefit plan as defined in 29 U.S.C. § 1002(1). The Sixth Circuit addressed this question in Blakeman v. Mean Containers, 779 F.2d 1146 (6th Cir.1985) and held that a state law cause of action for breach of contract regarding a severance pay plan was preempted by ERISA. The court there said:
It is clear that common law causes of action for breach of contract are preempted by ERISA. Id. at 1151.
This court finds as a matter of law that plaintiffs' breach of implied contract claim is preempted by ERISA.
However, even assuming arguendo, that ERISA does not preempt these state law causes of action, plaintiffs agree that their employment was originally an at-will employment but claim that it was altered by the various handbooks, manuals and various memoranda published by Firestone. They allege that they relied on the content and procedures described in such publications.
Ohio recognizes that absent a specific term of employment, the employment-at-will doctrine allows either party in the relationship to terminate it for any reason not contrary to law. Phung v. Waste Management, Inc., 23 Ohio St.3d 100, 102, 491 N.E.2d 1114 (1986); Mers v. Dispatch Printing Co., 19 Ohio St.3d 100, 103, 483 N.E.2d 150 (1985). However, Ohio courts have also found that under certain facts and circumstances parties can be said to have modified an at-will employment relationship to create an enforceable agreement which protected the employee from termination without just cause. Mers v. Dispatch Printing Co., 19 Ohio St.3d at 101, headnote 2, 103, 105, 483 N.E.2d 150; Jones v. East Center for Community Mental Health, Inc., 19 Ohio App.3d 19, 21-24, 482 N.E.2d 969 (Lucas Cty.Ct.App. 1984). Provisions in an employment manual have been found to be binding on an employer on a promissory estoppel theory, even in an at-will relationship, if the employer should reasonably expect those provisions to induce action or forebearance by the employee and which does so induce or cause forebearance by the employee. Jones v. East Center for Community Mental Health, Inc., 19 Ohio App.3d at 23-24, 482 N.E.2d 969. Under a theory of equitable estoppel, plaintiff must show that: (1) a promise was made by defendant; (2) which the promisor should reasonably expect to induce action or forebearance (3) and which did induce such action or forebearance; and (4) enforcement of the promise is the only way to avoid injustice. Mers. v. Disptach Printing Co., 19 Ohio St.3d at 104, 483 N.E.2d 150.
The latest versions of Firestone's publications could not be the basis of plaintiffs' acceptance of their positions since they were promulgated later. See Cohen & Co. v. Messina, 24 Ohio App.3d 22, 24-25, 492 N.E.2d 867 (Cuyahoga Cty.Ct.App.1985); Jones v. East Center for Community Mental Health, Inc., 19 Ohio App.3d at 21-22, 482 N.E.2d 969.
*505 Plaintiffs claim that during the years prior to the divestiture, Firestone circulated memoranda regarding its "bumping" or "transferring" policy, where they would allow senior employees with many years of credited service to "bump" or "transfer" into other positions, even lower paying ones, rather than being terminated. Plaintiffs claim that they relied on these to such an extent that they refused other job offers. But, the key here is that plaintiffs were not terminated, in the sense that their positions although eliminated from Firestone, continued to exist with Pro-Tread. They did not become unemployed, and no one else was hired to fill their positions. The Retread Division was sold, transferred as a whole unit to Pro-Tread Corp., and none of the affected two hundred seventy-five employees were allowed to transfer into another Firestone position.
Furthermore, the express language in the 1984 field employee handbook which governed plaintiffs Smith and Dunn said:
Employment at Firestone is at will, which means you have the right to terminate the employment relationship at any time, for any reason. Firestone has the same right to terminate you unless otherwise prohibited by state/local laws.
(Coles Aff. ¶ 5; Exh. C at p. 7).
The 1982 Akron grade Firestone Salaried Employees Handbook which governed plaintiff Bowman's employment has similar language:
Your employment
Employment at Firestone is at will, which means you and Firestone have the right to terminate the employment association at any time.
(S. Smith Aff. ¶ 3, Exh. B at p. E-7, c at p. 3).
Ohio courts have recognized the enforceability of such disclaimers, Kiel v. Circuit Design Technology, slip op. No. 54481, 1988 WL 112864 (8th Appellate Dist.Cuy. Cty.1988); Bernard v. Rockwell Int'l, 869 F.2d 928, (6th Cir.1989). Moreover, plaintiffs themselves allege that the handbooks and manuals created an implied contract, if so these express unambiguous disclaimers were part of the contracts and should be given effect. Therefore, the court finds no genuine material issue of fact regarding plaintiffs implied contract and promissory estoppel claims and defendant is granted summary judgment on these claims.

B. O.R.C. § 4101.17Ohio Age Discrimination Claim
Lastly, plaintiffs also advanced an age discrimination claim in Count II of their complaint. They base their claim on the fact that Firestone produced and used Age Data Forms and on the fact that Firestone offered various early retirement incentive programs during 1982 to 1985. (Bowman Dep. 88, Dunn Dep. 40-41), Smith Dep. 43-44).
Although, after the summary judgment motions were filed, the plaintiffs moved for voluntary non suit on this issue, the court will address it summarily to dispose of this whole case in one order.
Again, it is important to reiterate here that the entire Firestone Retread Division was sold as a whole to Pro-Tread. All employees, young and old alike, without exception, were offered immediate, continuous employment with the purchaser, at the same salary rate, in the same location, at the same position. Indeed, all three plaintiffs continued their employment with Pro-Tread. (Bowman Dep. 61; Dunn Dep. 26; Smith Dep. 24).
To establish a prima facie case and create a genuine issue of material fact the plaintiffs must prove a violation of O.R.C. § 4101.17 by showing:
(1) that [plaintiff] was a member of the statutorily protected class;
(2) that he was discharged;
(3) that he was qualified for the position, and
(4) that he was replaced by a person who did not belong to the protected class.
Barker v. Scovill, Inc., 6 Ohio St.3d 146, 148, 451 N.E.2d 807 (1983).
In Speece v. Leasway Transp., 48 Fair Empl.Prac.Cas. (BNA) 1127 (N.D.Ohio 1988) Judge Battisti held:

*506 Although the Ohio Supreme Court cited Ackerman [v Diamond Shamrock Corp., 670 F.2d 66 (6th Cir.1982)] as a source of authority for these requirements, it adopted a more restrictive test for a prima facie case of state age discrimination than that used for federal violations. Specifically, the court requires that a plaintiff show that "he was replaced by ... a person who did not belong to the protected class." Barker, supra, at 148 [451 N.E.2d 807]. In the instant case, Plaintiff was replaced by a person within the protected class (42 years old). Thus, Plaintiff has failed to raise a genuine issue of material fact on each element of a prima facie violation of O.R.C. 4101.17. Defendant's motion for summary judgment with regard to Count II of the complaint is hereby granted.
Id. at 1129.
This line of reasoning is supported by Baurichter v. Addyston, 31 Ohio App.3d 121, 122-23, 509 N.E.2d 80 (1986); Seymour v. ITT Corp., Case NO. 3-87-4, 1988 WL 57608 (Cuyahoga Cty.Ct.App.1988). Both these cases dealt with elimination of positions. The courts found that the plaintiffs were not "discharged," but positions eliminated and that since none was hired to fill their positions they failed to establish even the prima facie inference of unlawful conduct.
This court agrees. In the case at bar plaintiffs were in the protected class; and they were qualified for the positions they held. However, they were not "discharged" in the true sense of the word and most importantly none was hired to replace them. Furthermore, neither were their duties assumed by others. Therefore, the plaintiffs failed to establish a prima facie case of age discrimination under O.R.C. 4101.17.
Plaintiffs' claim that the mere fact that defendant developed and used Age Data Forms indicates age discrimination, is unpersuasive for several reasons. First, the federal Equal Employment Opportunity Commission requires that such records be kept under 29 C.F.R. § 1627.3 (1988). These records must contain employees name, address, date of birth, occupation, rate of pay and compensation earned each week. Second, plaintiffs themselves testified that they used such forms for every day management and did not use the age information in a discriminatory fashion. Thus, without further evidence of discriminatory use, these forms are not supportive of plaintiffs' age discrimination claim. See Sorosky v. Burroughs, 826 F.2d 794, 804 (9th Cir.1987). Firestone's early retirement incentive programs, as offered periodically do not constitute proof of age discrimination. Such programs were offered to the entire workforce, and none was coerced to accept. Plaintiff Dunn was not even offered such early retirement. (Dunn Dep. 41). As defendant pointed out there is strong case law precedent supporting the holding that mere offer of early retirement does not constitute age discrimination. See Henn v. National Geographic Society, 819 F.2d 824, 826-28 (7th Cir.1987), Schuler v. Polaroid Corp., 848 F.2d 276 (1st Cir.1988) Ackerman v. Diamond Shamrock Corp., 670 F.2d 66 (6th Cir.1982), Coburn v. Pan American World Airways, Inc., 711 F.2d 339, 344 (D.C.Cir.1983), cert. denied, 464 U.S. 994, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); Bodnar v. Synpol, Inc., 843 F.2d 190 (5th Cir.1988). Therefore, defendant's motion for summary judgment on this count should be granted.
Accordingly, defendant Firestone's motion for summary judgment is granted on all counts. (Docket No. 33, 32, 35). This case is dismissed in its entirety.
IT IS SO ORDERED.
NOTES
[1] Mr. Gregory Zemla was the manager for salaried sales personnel. He administered, interpreted and explained personnel policies for Akron grade salaried employees. He was plaintiff Bowman's personnel representative (Zemla Aff. at 1).