Donald H. GOGGANS, etc., Plaintiffs,

v.

CONTAINER CORPORATION OF AMERICA, etc., Defendants.

Civ. No. 1–87–467.

United States District Court, S.D. Ohio.

May 26, 1989.

Stephen Meiser, Cincinnati, Ohio, for plaintiffs.

Todd Bailey, Cincinnati, Ohio, and Columbus Gangemi, Chicago, Ill., for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court for determination pursuant to trial in which there

was the presentation of evidence and testimony. Plaintiff, on behalf of himself and others similarly situated, seeks "Termination Pay" from Defendant based upon events that occurred in August, 1984. In accordance with Fed.R.Civ.P. 52, the Court does submit herewith its Findings of Fact and Conclusions of Law.

## I.

### FINDINGS OF FACT

1. Defendant Container Corporation of America (CCA) is a Delaware corporation with its principal place of business in Clayton, Missouri. Until approximately October, 1, 1986, CCA was a wholly-owned subsidiary of dismissed Defendant Mobil Corporation (Doc. No. 57). CCA is licensed to do business in Ohio.

2. Defendant Jefferson Smurfit (JSC) is a Delaware corporation with its principal place of business in Clayton, Missouri. On or about October, 1, 1986, JSC acquired certain CCA stock. JSC is licensed to do business in Ohio.

3. Prior to August 20, 1984, Defendant Container Corporation of America ("CCA") owned uncoated boxboard mills in Chicago, Illinois, Chattanooga, Tennessee, and Cincinnati, Ohio. On that date the mills were sold to Caraustar Industries, Inc. ("Caraustar"). The mills were purchased as operating entities and all of the salaried employees of CCA remained employed up to the moment of sale and were thereupon maintained in their same positions with their same salaries and with substantially their same benefits by Caraustar. No such employee was required because of the sale to change jobs or to relocate to a different city.

4. On October 18, 1988, this Court certified a class defined as follows:

All persons who were salaried nonunion employees of Container Corporation of America in the Cincinnati Paper Board, Chattanooga Paper Board or Chicago Paper Board mills (Mill Division), at the time of the sale of such mills to Cincinnati Paper Board Corporation, Chattanooga Paper Board Corporation, and Chicago Paper Board Corporation on August 20, 1984, who were terminated from their jobs by the sale of such mills to the foregoing corporations.

(doc. 62)

5. From December, 1958, through August, 1984, Donald H. Goggans, class plaintiff, was a non-union salaried employee of CCA. During his managerial capacity with CCA, he maintained in his office Plaintiffs' Exhibit 7, entitled "Employees Relations Policy Guide." Mr. Goggans was at all times aware of the existing policy of CCA regarding termination. His knowledge and the lack of such knowledge by other members of the class is immaterial to his ability to act as class plaintiff. *See Model Associates, Inc. v. U.S. Steel Corporation*, 88 F.R.D. 338 (S.D.Ohio 1980).

6. Plaintiff Goggans first learned of the accrual of his cause of action upon reading an article entitled "Sweet Sorrow" in Forbes Magazine, September 23, 1985. (Pltf. Ex. 37). The complaint in this action was filed on June 15, 1987.

7. The only other sale by CCA of a division where managerial employees continued in their employment occurred in 1982 when its "Composite Can Division" was sold to Sonoco Products Company. In that instance no termination pay was awarded to any managerial employee retained by Sonoco after a sixty day probationary period. Any such employee discharged during the sixty-day period was awarded termination pay by CCA in accordance with its then stated policy.

8. The termination pay policy of CCA at all times pertinent to the inquiry herein consisted of the following:

A. Policy Effective November 30, 1977 (Defendant's Exhibit A). Beginning in 1977 the pertinent portion of CCA termination pay policy was as follows: "Salaried employees whose employment with the company is terminated for the following reasons may be considered for termination pay ... those resigning ... because such action is initiated by the company." Neither party contends that the policy of 1977 is applicable.

B. Policy Effective March 1, 1983 (Defendant's Exhibit D). The pertinent portion of that policy was as follows: "Salaried employees whose employment with the corporation is terminated for the following reasons may be considered for termination pay ... those terminating or resigning: ... because of corporation initiated action including reduction in work force."

C. Effective April 18, 1984, the policy of the company was changed as follows: (Defendant's Exhibit M)

"It is the policy of the company to grant termination pay to a salaried employee terminated by the company in a situation involving a reduction in work force and/or job elimination in accordance with the following schedule: ... Job elimination is defined as a job that is eliminated and remains unfilled for a minimum of thirteen months. Job elimination can also be created by the closure of an entire plant or division. It does *not* include the sale or other transfer of a plant or division as an operating unit which will be handled on a case by case basis." (emphasis not added). At the time of the adoption of the 1984 changes, discussions were in progress regarding some disposition of the mills in question.

9. If the 1984 policy is deemed controlling as to these plaintiffs, they would have no right of termination pay because of the specific exclusion of the sale or transfer of a plant. There is also some discretion retained in the 1984 policy as indicated by its language. If the 1983 policy is deemed to be controlling, the use of the word "may" is significant particularly in view of the 1982 sale to Sonoco which was precedent for a discretionary handling of such termination pay by CCA.

10. The use of the word "may" in the policy statement and the discretionary manner in which it was utilized militate against a finding that plaintiffs were entitled to termination pay as a matter of right. Lacking such right, they could only receive it if CCA in its discretion determined to award it.

II.

## CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to 29 U.S.C. § 1132.

B. The standard of review applied to a denial of benefits challenged under 29 U.S.C. § 1132 is a *de novo* review, rather than arbitrary and capricious unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The parties have stipulated that the present action is subject to the standard of review controlled by *Firestone Tire & Rubber Co. v. Bruch, supra.*

C. The statute of limitations period set forth in Ohio Revised Code § 2305.06 for a contract in writing is 15 years and is the most analogous statute of limitations. *Cowden v. Montgomery Co. Soc. For Cancer Control,* 591 F.Supp. 740 (S.D.Ohio 1984), *supra; Plazzo v. Nationwide Mut. Ins. Co.,* 697 F.Supp. 1437 (N.D.Ohio 1988). See also *Laborers' Pension Trust Fund, Et al. v. Sidney Weinberger Homes,* 865 F.2d 258 (6th Cir.1988); *Central States Southeast and Southwest Areas Pension Fund v. Kraftco, Inc.,* 799 F.2d 1098 (6th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987). Accordingly Defendants CCA and JSC are not entitled to dismissal of this action as time-barred under the applicable statute of limitations.

D. In the context of the denial of severance pay in the event of a sale of a company, the Court must examine the particular facts of the situation to determine the employees' rights under a welfare benefit plan. Factors to be considered are: (1) consistency (other approaches by the employer in similar situations), *Adcock v. Firestone Tire and Rubber Co.,* 822 F.2d 623 (6th Cir.1987), *supra; Blakeman v. Mead Containers,* 779 F.2d 1146, 1151 (6th Cir.1985); (2) the employer's purpose and intent in granting severance pay (which may be evident from the terms of the plan

or the employer's past practices), *Adcock*, 822 F.2d at 626–27; (3) whether the severance plan vested the administrator with flexibility or discretion to apply the plan, *Blakeman, supra;* (4) the nature of the sale; and (5) the extent to which the employer has complied with ERISA's procedural requirements. *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985).

E. Unemployment is generally construed as a prerequisite to welfare benefits, as severance pay is usually intended to "tide over" an employee while seeking a new job and is deterred from being a bonus award. *Adcock v. Firestone Tire & Rubber Company*, 822 F.2d 623, 626 (6th Cir. 1987).

F. The language of both plans, the 1983 and the 1984 policy, and the testimony during trial indicate that it was the past patterns and practices as well as the intention of CCA to provide an unemployment benefit rather than a bonus upon termination of a participant. In interpreting the plans, the Court has construed the language, the intentions of CCA and the patterns and practices to be discretionary in manner.

G. Accordingly, the Court finds that the award of termination or severance pay to members of the class by defendant CCA is a discretionary act on behalf of the defendant to be determined in accordance with their past patterns and practices and intentions consistent with the plan's terms.

IT IS SO ORDERED.