BRICKLAYERS LOCAL UNION #14, INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN, AFL–CIO, a voluntary unincorporated labor organization, and Bricklayers and Trowel Trades' International Pension Fund, Bricklayers' Industry Advancement Fund and Bricklayers' Joint Apprenticeship Training Committee, trust funds established under, and administered pursuant to, federal law, Plaintiffs,

v.

COLASANTI CORPORATION, a Michigan corporation, Defendant.

No. 90–CV–71902–DT.

United States District Court, E.D. Michigan, S.D.

April 3, 1991.

Mark R. Granzotto, Detroit, Mich., for plaintiffs.

James A. D'Agostini, Dickinson, Wright, McKean, Cudlip & Moon, Bloomfield Hills, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

This matter is before the Court on cross-motions for summary judgment. In addition, this Court has accepted an Amicus brief filed on behalf of the Associated Concrete Contractors of Michigan.

### FACTS

Plaintiff, Bricklayers' Local Union # 14, and three affiliated pension and fringe benefit funds (hereinafter collectively Local 14), filed this suit against defendant, Colasanti Corporation (hereinafter defendant), for breach of contract. Local 14 seeks payment of wage and pension benefit differentials, union dues and other fringe benefits.

This dispute arose due to 1987 construction work performed by defendant on a project located in Washtenaw County, Michigan. A majority of the cement masons employed on the project as hourly employees were members of Local 14. Those employees were paid in accordance with the provisions of the Local 14 contract. Defendant also used several of its own key employees who belonged to local unions in the adjacent geographical jurisdiction, including Cement Masons' Union, Local 514 (Detroit), Local 29 (Pontiac), and Local 26 (Mt. Clemens) (hereinafter collectively "Detroit union"). These employees were paid according to the provisions of the Detroit union contract. Defendant is a member of the Associated General Contractors of America, Detroit Chapter, Inc. and is, therefore, bound by the Detroit union contract. While defendant is not a member of Local 14, defendant did become a signatory to the Local 14 contract on March 14, 1988. The jurisdictions of Local 14 and the Detroit union are exclusive. The Detroit union covers Detroit, Mt. Clemens and Pontiac. The Local 14 union encompasses all of Washtenaw County and certain specific areas of Livingston County.

The parties do not dispute that employees from the Detroit union were paid according to the Detroit union contract, while employees from Local 14 were paid in accordance with the provisions of the Local 14 contract. However, Local 14 now brings this breach of contract action against defendant alleging that defendant failed to pay specific wages, failed to comply with union check-off provisions and did not make pension and fringe benefit payments in accordance with the Local 14 contract for those employees who were members of the Detroit union working on the Washtenaw County project. Plaintiff essentially asserts that since the work was performed in Washtenaw County, all employees, including members of the Detroit union should be paid in accordance with the Local 14 contract. This would include payment to Local 14 of all fringe benefits for workers who were members of the Detroit union.

Defendant submits that its refusal to make payments to Local 14 on behalf of Detroit union members was not a breach of contract. Defendant claims the demands of Local 14 would constitute an unreasonable restraint of trade under the Sherman Act. Defendant also submits Local 14 has failed to exhaust its contractual remedies under the collective bargaining agreement. Finally, defendant claims Local 14 lacks standing to assert the contractual rights of the Detroit union members. Accordingly, defendant has moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at

2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.*, 806 F.2d 673, 675 (6th Cir.1986). Where the nonmoving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

## OPINION

■ The parties agree that this is a simple contract dispute concerning the interpretation of a labor agreement. Specifically, this Court must interpret the Local 14 contract to determine whether that contract gives Local 14 exclusive rights to fringe benefits earned by all workers within its territory or only rights to those benefits earned by its own Local 14 members. This interpretation will also essentially determine whether all workers within the Local 14 territory must be paid according to the wage scales of the Local 14 contract regardless of any specific local union affiliation of the worker.

In this instance, defendant submits the Local 14 contract requires a contractor to hire a minimum of 75% of its work force from the Local 14 jurisdiction. Defendant claims this obviously contemplates that as much as 25% of the work force may therefore be obtained from other geographical jurisdictions. According to defendant, this allows non-local contractors such as defendant to assign, to any construction project, key employees who are the most familiar with the contractors' operations and/or procedures. Defendant submits that under

the Local 14 contract, it may utilize a small percentage of employees from the Detroit union as long as it does not violate the 75%/25% labor force ratio in the Local 14 contract. (Defendant's motion for summary judgment, pp. 5–6).

■ Defendant further cites to the Non–Association contractors' agreement of the Local 14 contract which states in part:

> In the event that the undersigned [Colasanti] accepts work anywhere in the geographical area of the International Union of Bricklayers and Allied Craftsmen, he shall become signatory to a Local Collective Bargaining Agreement, or be bound to the terms and conditions of the Agreement with the International Union of Bricklayers and Allied Craftsmen Local Union No. 14 MI ...
>
> \* \* \* \* \* \*
>
> The undersigned company [Colasanti], by its authorized agent who has executed this Agreement, hereby affirms that it has read the collective bargaining agreement attached hereto and that it is familiar with its terms, and the undersigned company hereby adopts and accepts the attached agreement in its entirety as the basis upon which it will employ members of Local Union No. 14 MI.

(Defendant's motion, Exhibit A, pp. 50–51). Defendant claims these provisions indicate that it may bring into the Washtenaw Local 14 jurisdiction a portion of its employees from outside the jurisdiction of Local 14 (i.e. Detroit union members). According to defendant, these outside employees may be paid in accordance with "a local collective bargaining agreement," in this instance the Detroit union contract.

This Court agrees with defendant's arguments. The language clearly indicates that the undersigned (Colasanti) upon accepting work anywhere in the geographical area of the union, shall then become signatory to a local collective bargaining agreement *or* be bound to the terms and conditions of the agreement with Local 14 (emphasis added). In this instance, Sam Palazzolo, the individual who signed the Non–Association Contractors' Agreement as a representative of Local 14, has admitted in his deposition

that the Detroit Local 514 contract is one of those contracts which qualifies as a "local collective bargaining agreement." (Defendant's reply brief, pg. 4). Defendant brought in outside employees from the Detroit union. These employees were members of Detroit Local 514, a local collective bargaining agreement to which defendant had become bound. Accordingly, the defendant satisfied the Non–Association Contractors' Agreement and was thereby entitled to pay the wages and fringe benefits of these outside employees in accordance with their own Detroit union contract (a local collective bargaining agreement).

Moreover, the Non–Association Contractors' Agreement indicates that the terms of the [Local 14 contract] [are] "adopt[ed] and accept[ed] in [their] entirety as the basis upon which [defendant] will employ members of Local Union No. 14 MI" *Id.* This language requires defendant to employ members of Local 14 in accordance with the terms of the Local 14 contract. No language requires defendant to employ members outside of Local 14 pursuant to terms and conditions of Local 14.

However, Local 14 contends that pursuant to the contract which defendant signed, all cement masons performing work within the geographical jurisdiction of Local 14 must be paid in accordance with the Local 14 contract. This essentially would include payment of wages pursuant to the Local 14 contract for Local 14 employees and employees of other local unions, as well as payment of fringe benefits for all employees to Local 14. Local 14 specifically cites to articles XXI, XXII and XXIII of the Local 14 contract which require a uniform wage and fringe benefit rate for all employees working in the geographical jurisdiction of Local 14.

■ As defendant has stated, however, those specific articles along with the other articles under the Local 14 contract were adopted and applicable in their entirety "as the basis upon which [Colasanti] will employ members of Local Union No. 14 MI." (Non–Association Contractors' Agreement, pg. 51 of Local 14 Contract). Accordingly,

this Court concludes that nothing in the Local 14 contract imposes any duty on defendant to pay members of the Detroit union in accordance with the Local 14 contract.

Local 14's claim that employees working within the Local 14 jurisdiction should accordingly be paid pursuant to the Local 14 contract has previously been dismissed by this Court. *Bricklayers' Local Union 14 v. Russell Plastering Company*, 88–CV–74035–DT (E.D.Mich. Oct. 12, 1990). In that opinion, Judge Paul V. Gadola adopted the report and recommendation of Magistrate Judge Marc Goldman and ruled against Local 14's assertion that a provision of the Local 14 contract be construed to require the defendant to make fringe benefit contributions to Local 14 based on the work of employees from another local union merely because the work was performed within Local 14's jurisdiction. The *Russell* court stated:

> ... A common sense, equitable approach to the parties' dispute mandates that in the absence of any express language in the collective bargaining agreement to support Local 14's interpretation, the agreement's silence should not be construed to require Russell to make fringe benefit contributions to Local 14 based on the work of Local 67's plasterers. Rather, the payment of fringe benefits by the employer should correspond with the affiliation of each worker; that attributable to the work of a Local 67 member should be paid to his or her pension fund; that attributable to the work of a Local 14 member be paid to Local 14's fund. There is no basis under the contract for reaching a different result.

*Russell, (supra)*, at 14.

Plaintiffs submit that *Russell* is inapposite because in that case there was an absence of any specific language in the collective bargaining agreement. According to Local 14, there is no absence of express language in this instance. This Court respectfully disagrees. In fact, this Court concludes that the contract between Local 14 and defendant lacks any specific language mandating that defendant pay members of the Detroit union according to the Local 14 contract. Instead, the language in the agreement signed by defendant indicates that the application of the agreement is limited to and based upon defendant's employment of members of Local Union 14. The agreement also allows defendant to become a signatory to a "local collective bargaining agreement." Defendant has complied with this requirement since the Detroit union is a local collective bargaining agreement.

Contracts that are unambiguous are not open to construction and must be enforced as written. *Cleveland–Cliffs Iron v. Chicago & N.W. Transp. Company*, 581 F.Supp. 1144 (W.D.Mich.1984); *Britton v. John Hancock Life Insurance Company*, 30 Mich.App. 566, 186 N.W.2d 781 (1971). Where parties disagree as to the terms embodied in an agreement, summary judgment may still be granted. *Tennessee Consolidated Coal Co. v. United Mine Workers of America*, 416 F.2d 1192, 1199 (6th Cir.1969). This Court is not persuaded by plaintiffs' interpretation of the language of the Local 14 contract. Instead, this Court concludes that defendant may properly employ Local 14 employees pursuant to the Local 14 contract while at the same time employ a small percentage of outside employees pursuant to other respective union contracts.

In its amicus brief, the Associated Concrete Contractors of Michigan (ACCM) labeled this lawsuit a "turf war between the plaintiffs and the Detroit locals ..." (Amicus brief, pg. 3) "and a political turf war in the guise of a lawsuit in federal court" ... (Amicus brief, at 4). This Court need not determine the accuracy of such a statement. However, this Court does agree with the ACCM's assessment that members of both unions have been treated fairly by defendant. The Detroit union members have elected representatives who have negotiated and executed a contract on their behalf with defendant. The plaintiffs' union members have likewise done the same. (Amicus brief, pp. 3–4). In fact, all employees working for defendant have been properly paid pursuant to their own local union contract. The fact that the work was per-

formed inside Washtenaw county is irrelevant. Defendant has paid in full all the wages and fringe benefit dues owed to employees who were members of both the Washtenaw Local 14 and the Detroit union.

### CONCLUSION

Based upon the foregoing, this Court concludes that the Local 14 contract with defendant did not require defendant to make payments to Local 14 in accordance with the Local 14 contract on behalf of Detroit union members. Accordingly, no breach of contract has occurred and, therefore, no genuine issues of material fact remain for trial. Defendant is entitled to a judgment as a matter of law. This Court need not address defendant's claims with respect to the Sherman Act, exhaustion of contractual remedies pursuant to the collective bargaining agreement, or standing. Defendant's motion for summary judgment is GRANTED and Local 14's motion for summary judgment is DENIED.

IT IS SO ORDERED.